601 So.2d 812 (1992)
Elaine JOLIVETTE and Albert J. Decuir, Individually and as Tutors of the Minor Child, Katidre Jolivette, Plaintiffs-Appellants,
v.
IBERIA PARISH SCHOOL BOARD, Defendant-Appellee.
No. 91-316.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1992.
*813 Guidry & Guidry, Edmond L. Guidry, III and Carolyn Dietzen, Lafayette, for Jolivette, appellant.
Landry, Watkins & Bonin, Nan M. Landry, New Iberia, Iberia Parish School Bd., appellee.
*814 Before DOMENGEAUX, C.J., and DOUCET, J., and PATIN[*], J. Pro Tem.
DOMENGEAUX, Chief Judge.
The parents of 13 year old Katidre Jolivette sued the Iberia Parish School Board for injuries Katidre sustained when she slipped and fell on a damp gymnasium floor. The trial court rendered judgment in favor of the plaintiffs, but also found Katidre to be 50% at fault in the accident. The plaintiffs have appealed, assigning three errors. Because we find merit in one of the three assigned errors, we affirm in part and reverse in part for the following reasons.

FACTS
On April 5, 1988, Katidre Jolivette, a seventh grade student at Anderson Middle School in New Iberia, slipped as she walked across the gym floor at the end of her third hour physical education class. Katidre was a member of Coach Richard Frederick's class, one of four classes assigned to the gym during that hour.
At the beginning of the third period, students from all four classes were instructed to sit in the bleachers for the entire hour while the janitors mopped the gym floor. Although the students were instructed not to cross the gym floor at the beginning of the hour, those instructions were not repeated at the end of the hour. When the bell rang signalling the end of the third period, Katidre and approximately 40 other students walked across the gym floor to get to their next class. Katidre fell near the top of the basketball key, sustaining serious injuries to her right hip. Several students who were in the gym at that time testified that the floor was still damp from the recent mopping, although no obvious puddles of water were present.
Katidre sustained a slipped capital femoral epiphysis, with vascular necrosis. Katidre could not walk on her own for approximately one year after the accident, and she had to have a private tutor to finish the school year.
The trial court concluded that Katidre's fall was caused by the dampness of the floor. He found the School Board was responsible in part for Katidre's injuries because the janitors should not have been mopping the gym during the physical education class and because one instruction at the beginning of the hour was inadequate. He also found Katidre was 50% at fault in causing her injuries because she crossed the gym floor when she had been instructed not to do so. The trial court awarded the following damages, subject to a reduction of 50% for Katidre's fault:

Pain and sufferingpast,
 present and future $250,000.00
Past medical expenses 15,318.22
Future medical expenses 49,500.00
Future lost wages 50,000.00
Loss of consortium to mother 1,000.00
Loss of consortium to father 1,000.00
 ___________
Total: $376,818.22

Only the plaintiffs have appealed. They contend the trial court erred in assessing Katidre with 50% comparative fault, and they seek an increase in the awards for future medical expenses and future loss wages.

COMPARATIVE FAULT
In Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La. 1985), the Supreme Court identified five factors for the courts to consider in apportioning fault in a comparative negligence situation:
(1) whether the conduct resulted from an inadvertence or involved an awareness of the danger;
(2) how great a risk was created by the conduct;

*815 (3) the significance of what was sought by the conduct;
(4) the capacities of the actor, whether superior or inferior; and
(5) any extenuating circumstances which might require the actor to proceed in haste without proper thought.
Further, Katidre's negligence is not measured by the standard of self-care expected of an adult but rather only by the self-care expected of a child of her age, intelligence and experience under the circumstances presented. Howard v. Allstate Insurance Co., 520 So.2d 715 (La.1988).
The trial court correctly concluded that the school officials should not have permitted the janitors to mop the gym floor during the third hour when four P.E. classes were scheduled to use the gym. The accident occurred on the Tuesday after Easter, the first day the students had returned to class from the holidays. The judge saw no reason, and the School Board offered no explanation, as to why the mopping was not done on the Monday before the students returned.
The trial court was also correct in finding that one instruction at the beginning of the class period was insufficient to keep the seventh and eighth graders from crossing the gym floor when it was time for them to go to the next class. Although the school had a policy against students crossing the gym floor in street shoes, the record suggests this rule was not strictly enforced. Coach Richard Frederick testified that the students were told this rule at the beginning of the school year, and the teachers enforced it as best they could. However, he stated that students frequently crossed the gym to get to the cafeteria or to other classes. Katidre said she crossed the gym daily to get to her classes.
The trial court apparently recognized that the seventh and eighth graders needed more supervision than was given on the day of Katidre's accident. He stated in his reasons for judgment:
But we could see from the kids who testified in this case today that one warning, one instruction, one caution is not enough. Some of them don't even remember what was going on that day. That is how much all that meant to them. Some of them don't remember any instructions being given, although obviously there were. So it just points out that, with children of that age and that kind and the responsibility that they feel they have, you have to give more instruction than was given as to where to walk and where not to walk.
Although we find no error in the trial court's factual findings, we find the trial court erred in assessing such a high percentage of fault to Katidre's conduct. Applying the factors in Watson, supra, we find Katidre's actions only minimally contributed to her accident.
The record does not support a finding that Katidre proceeded with an awareness of danger. Katidre admitted she saw the janitors mopping the gym floor during the class period; however, the janitors had left before the class was dismissed. There were no obvious puddles of water on the floor. When the bell rang, Katidre and the other students crossed the gym floor as they had done many times in the past. No one directed the students to stay on the sidelines. Katidre was only guilty of inadvertently disregarding the one instruction that we have already deemed insufficient. The school officials were clearly the superior actors in creating the hazardous situation and in failing to adequately supervise the children. Any one of the four teachers assigned to the gym that hour could have easily prevented the students from walking across the gym floor. Considering the above, we will assess Katidre's fault at 10%.

FUTURE MEDICAL EXPENSES
Katidre sustained a slipped capital femoral epiphysis, or a separation in the growth plate of her still-growing femur. Further, vascular necrosis, or the death of tissue caused by poor circulation, has caused a flattening of the femoral head. The irregularly shaped femur in the round hip socket produces pain and friction in the hip joint. Katidre walks with a marked *816 limp and her right leg has a permanent external rotation. The record establishes that Katidre's injury was very painful and that she will experience pain throughout her life.
Katidre has already undergone two surgeries, one to pin the growth plate back into place and another to remove the pin when the separation healed. Dr. Douglas McKay, a specialist in pediatric orthopedics, testified that there is a 75% chance that Katidre will need more than one surgical procedure in the future. The most hopeful treatment would be an osteotomy, which is the cutting and reshaping of the bone. A second option is a fusion, which would stabilize Katidre's condition, but would also result in further restriction of movement. The final choice, a total hip replacement, would not last Katidre's entire lifetime. Because of Katidre's age, Dr. McKay could not state which procedure or procedures would be required. He estimated the cost of two to three surgeries, including physical rehabilitation and other related expenses, to be around $60,000.00.
Dr. Louis Blanda, Katidre's treating orthopedist, agreed with Dr. McKay that the cost of two to three surgeries would be approximately $60,000.00. He testified that there is a 90% chance that Katidre will need at least one more surgical procedure in her lifetime. He, too, could not be more specific as to which procedure would be necessary.
The trial court awarded the plaintiff $49,500.00 in future medical expenses. He reached this figure by averaging the two percentages given by the doctors to get 82% and then by calculating 82% of $60,000.00. The plaintiffs contend the trial court's method of calculation in effect increased their burden of proving future medical expenses to 100%, rather than by a preponderance of the evidence.
Upon review of the record we find no error in the amount awarded for future medical expenses. Both doctors who testified were uncertain as to what procedures might be needed in the future. Both agreed that a fusion, the preferred procedure on a young person, would permanently stabilize Katidre's condition. A total hip replacement, the procedure most likely to require repeated surgical intervention, was not recommended for someone as young as Katidre. Although the plaintiffs have proved the need for some future medical expenses, they have not proved that Katidre will require the full cost of the two to three surgeries as testified by Dr. McKay. Had the plaintiffs proved this, then perhaps their argument about the trial court's method of calculation would have had some merit. However, based upon the uncertainty in the medical testimony, we find no manifest error in the amount awarded.

FUTURE LOST WAGES
Plaintiffs contend the trial court erred in awarding only $50,000.00 in future lost wages when they produced uncontradicted expert testimony showing that Katidre would sustain future economic losses between $277,966.58 and $426,702.84.
The trial court awarded $50,000.00 for loss of earning capacity after he concluded that without this injury, Katidre would have earned higher than minimum wage, but she would not have graduated from college. We find no error in these conclusions and in the amount awarded.
At the time of the accident, Katidre was an average student with marked deficiencies in science and in math. Ms. Stephanie Chalfin, a vocational rehabilitation counselor, testified that Katidre expressed an interest in working in the allied health professions. It was Ms. Chalfin's opinion that because of the physical limitations caused by the accident, Katidre was disabled from performing most jobs in this field. Mr. Donald Cornwell, the plaintiffs' expert economist, based most of his calculations upon the assumption that Katidre would have completed college but for the accident. Ms. Chalfin, however, testified that she would not recommend that Katidre go to college.
Uncontradicted expert testimony regarding the underlying facts is not binding on the court, but may not be lightly disregarded by the judge. Matthias v. Brown, 551 So.2d 821 (La.App. 3d Cir. *817 1989), writ denied, 556 So.2d 1263 (La. 1990). In the instant case, we find the trial court was not required to accept the economic testimony without question based upon Katidre's youth, lack of work history, and academic record. See Matthias, supra, at p. 824. The record does not support a conclusion that but for this accident Katidre would have finished college. Nor do we find evidence that Katidre would have sought the vocational training necessary to work in the allied health professions had she not been injured. We find no error in the trial court award for lost future wages.
For the above reasons, the judgment of the trial court is reversed insofar as it assigns 50% comparative fault to Katidre Jolivette. Katidre's fault is fixed at 10%. In all other respects, the trial court judgment is affirmed. Costs of this appeal are assessed to defendant.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[*] Honorable John A. Patin, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.