635 So.2d 314 (1994)
James ZIEGEL, as Administrator of the Estate of His Son, James Ziegel, Jr.
v.
SOUTH CENTRAL BELL.
No. 93-CA-547.
Court of Appeal of Louisiana, Fifth Circuit.
March 16, 1994.
*315 Robert A. Caplan, Lewis & Caplan, A Professional Law Corporation, New Orleans, for plaintiff-appellant.
Daryl A. Higgins, Thomas L. Gaudry, Jr., Windhorst, Gaudry, Ranson, Higgins & Gremillion, L.L.P., Gretna, for defendant-appellee/cross-appellant.
Before BOWES and CANNELLA, JJ., and John C. BOUTALL, J. Pro Tem.
JOHN C. BOUTALL, Judge Pro Tem.
Plaintiff, James Ziegel, Jr., sustained injuries when he cut his great toe on a telephone pedestal box located in the corner of his back yard. Made defendant was South Central Bell, owner of the box.
The case proceeded to a bench trial on January 21, 1993. The trial judge took the case under advisement, and rendered judgment on March 2, 1993. This judgment found South Central Bell liable for the broken condition of its box, and awarded the plaintiff $2,690.00 in special damages (the medical expenses) and $2,510.00 in general damages, for a total award of $5,200.00. Plaintiff devolutively appeals the amount of the award, urging it to be inadequate and an abuse of the trial court's discretion. South Central Bell answered the appeal, arguing the trial court erred in finding South Central Bell liable and, alternatively, argues that the trial court should have applied the principles of contributory negligence to reduce the plaintiff's recovery. For the reasons which follow, we affirm the trial court's judgment as amended.
*316 During the evening of July 24, 1990, James Ziegel, Jr. was playing chase in his back yard with his older brother, Robert, when he ran into a telephone pedestal box located on the ground in the corner of the yard. He suffered a laceration across the top of the toe. James' mother took him to West Jefferson Hospital emergency room where the toe was stitched up. About two months after his incident with the telephone box, on September 14, 1990, James Jr. hurt his other foot. The doctor who treated him this second time advised plaintiff's mother that he should see a specialist for the toe, as it looked somewhat misshapen. There was also testimony that plaintiff's toe rubbed on his shoe and was constantly irritated. Thereafter, about ten months later, (July 19, 1991) the plaintiff saw Dr. Chris Digrado, who diagnosed "mallet deformity." He operated on James' toe, shortening the tendon and placing a pin in the toe to stabilize the tendon. James wore two casts and was on crutches for a few weeks. Dr. Digrado testified in his deposition that the patient's progress post-operatively was good, and the doctor believed he would have no future problems with the toe. At the time of trial, plaintiff's toe function appeared to be normal.
For ease in discussion, we will consider South Central Bell's arguments first. The defendant argues that the trial court erred in finding them liable for the plaintiff's injuries. Alternatively, they argue the trial court erred in not applying the principles of comparative fault to reduce plaintiff's recovery.
On appeal, South Central Bell also asks that plaintiff's reply brief be stricken in whole or in part because plaintiff discusses the legal principles of strict liability therein. South Central Bell argues that since plaintiff's petition for damages is based on the theory of negligence, the discussion of strict liability is improper.
Initially, we note that the Louisiana Code of Civil Procedure establishes a system of fact pleading. As long as facts constituting a claim are alleged, the party may be granted any relief to which he is entitled under the pleadings and the evidence; the "theory of the case" doctrine, under which a party must select the theory of his case and adhere to it throughout the litigation, has been abolished. First South Production Credit Assoc. v. Georgia-Pacific, 585 So.2d 545 (La.1991).
Also, a judgment and reasons for judgment are two separate and distinct legal documents and appeals are taken from the judgment, not the written reasons for judgment. LSA-C.C.P. art. 1918. Succession of Velasquez-Bain, 471 So.2d 731 (4th Cir. 1985), writ denied, 476 So.2d 354 (La.1985). On appeal, the court of appeal reviews judgments and, where the court of appeal believes that the trial court reached the proper result, the judgment will be affirmed. Id., at 751.
Therefore, we would deny South Central Bell's motion regarding plaintiff's reply brief and consider the judgment itself, which finds South Central Bell liable for the plaintiff's injuries, and awards plaintiff damages of $5,200.00.
An action for negligence sounds under LSA-C.C. art. 2315 and 2316. In a typical negligence action against the owner of a thing which is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in damage; that the owner knew or should have known of the risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. In a strict liability action against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved. The other elements must be proven as in a negligence action. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982).
It was undisputed that South Central Bell owned the telephone pedestal box, and that plaintiff cut his toe on its exposed edge while he was playing in his back yard.
However, defendant disputes that they ever received notice about the box's condition, so as to support a finding that they were negligent. They also dispute the box's condition at the time of the accident.
*317 Tamie Ziegel, James Jr.'s mother, testified that five to six months before the accident, she called South Central Bell to report that the box was open and leaning to one side. She used the telephone number printed on her phone bill. South Central Bell counters that they have no record of any service call regarding this box. South Central Bell admitted that they have no routine inspection and maintenance schedule regarding these boxes. South Central Bell also admitted that they first saw the terminal box eight or nine months after the accident, when this litigation was imminent. Finally, South Central Bell said that if the box had been open all the time as plaintiff's witnesses allege, its phone lines would have had service problems, because of moisture in the lines. South Central Bell's records indicate that they received no calls regarding trouble with these lines.
To be found negligent, South Central Bell must have known or should have known about the condition of this terminal box. Evidently, the trial judge believed Mrs. Ziegel's claim that she notified South Central Bell. A trial judge's determinations of credibility are to be given great weight. Rosell v. Esco, 549 So.2d 840 (La.1989). However, we note that under strict liability, plaintiff does not have to prove that the defendant had knowledge of the box's condition. Kent v. Gulf States Utilities Co., supra.
Regarding the physical condition of the box at the time of the accident, both plaintiff witnesses, Robert and Tamie (the plaintiff's brother and mother), were shown a photograph of the box. Robert said that the picture did not exactly represent the box when James cut his toe on it. He said that the box was leaning halfway to the ground, but was not all the way on the ground as in the photograph. Robert stated that the box was opened, and that the bottom piece, which James ran into, was rusted as in the picture.
Tamie Ziegel testified that the picture fairly represented the box at the time of the accident. She agreed that the box was rusted when the accident occurred, and that it was opened up, exposing wires running into the ground.
The only discrepancies in the testimony regarding the box are relative to the position of the box, whether it leaned or was completely flat on the ground. (Normally, the box's position is straight up, or perpendicular to the ground). Both plaintiff's witnesses agreed that it was in a state of disrepair, was rusted, and had exposed wires. Therefore, the differences in their testimony do not counter the main issue, that the box was in a state of disrepair and dilapidation at the time of James' accident.
The record is clear that South Central Bell did not inspect the box, nor attempt to do so, until around eight to nine months after the accident, when litigation was imminent. Therefore, the trier of fact could have reasonably found that South Central Bell did not take reasonable steps to fix the telephone terminal box.
Next, South Central Bell argues that the condition of the box did not create an unreasonable risk of harm to plaintiff. They argue that there is no utility in a child running barefoot in the dark, and that South Central Bell should not be held to have a duty to prevent such accidents. Furthermore, they argue that the sole proximate cause of the accident was plaintiff's actions in carelessly running barefoot in the dark.
First, we note that South Central Bell owned this equipment, and that plaintiff's family had absolutely no authority to repair the box themselves. Second, South Central Bell construes the issue too narrowly, and we believe that there is great utility in a child's being able to play safely in his own back yard, at any time, without fear that he will be injured on a piece of equipment over which whose condition he has no control. Last, we believe that the trial court correctly found that James Jr.'s conduct was not the sole nor a contributing factor in the accident. While a child may be capable of comparative fault, he is not held to the adult standards of the comprehension of danger and the duty of self care. Crowe v. State Farm Mutual Auto. Ins. Co., 416 So.2d 1376 (3rd Cir.1982); Jolivette v. Iberia Parish School Board, 601 So.2d 812 (3rd Cir.1992). There is nothing in the record to indicate such reckless or unreasonable behavior on *318 the part of the plaintiff to hold him at fault, in any way, for the injuries he suffered. Plaintiff was behaving as a normal seven year old, and the trial court could have reasonably concluded that, but for the condition and position of the telephone box, plaintiff's injuries would not have occurred.

QUANTUM
Plaintiff argues that the amount awarded for pain and suffering is too low and should be raised to $20,000.00. The record shows that the plaintiff was awarded $2,510.00 for pain and suffering. Plaintiff sustained a laceration of the great toe, which was stitched up. His mother testified that plaintiff had a recurring sore where the toe rubbed his shoe, and that she noticed that he walked differently. When advised by another physician, two months after these stitches, that plaintiff should have his foot looked at by a specialist, plaintiff's mother testified that she put it out of her mind until ten months later, when she brought James Jr. to Dr. Digrado. Dr. Digrado performed the corrective surgery and opined that James would have no future problems with the toe. Other than the above testimony of plaintiff's mother, the record contains no evidence regarding the degree of plaintiff's pain or discomfort. All indications were that plaintiff healed fast with no complications.
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the case before it; only after an analysis of the facts and circumstances peculiar to the case before it and the individual involved therein may the review court determine the appropriateness of the award. Reck v. Stevens, 373 So.2d 498 (La.1979). Having reviewed the trial court's award under the above guidelines, we find that the trial court's award is inadequate. The lowest reasonable amount the trial court could have awarded for the plaintiff's pain and suffering is $5,000.00. Brown v. Sears Roebuck & Co., 503 So.2d 1122 (La.App. 3rd Cir.1987), affirmed, 514 So.2d 439 (La.1987) rehearing denied, 516 So.2d 1154 (La.1988), and Hicks v. Barney, 526 So.2d 391 (La.App. 4th Cir. 1988).
Accordingly, we amend the trial court's judgment and, as amended, affirm. All costs of this appeal are to be paid by South Central Bell.
AFFIRMED AS AMENDED