695 So.2d 1026 (1997)
Sylvia Joseph SHEAR, Alan Shear and Annetta Shear Krelitz
v.
Samuel SHEAR a/k/a Sam Shear and Shirley Goodman Shear.
No. 96-CA-934.
Court of Appeal of Louisiana, Fifth Circuit.
May 28, 1997.
Rehearing Denied July 17, 1997.
*1027 Harry A. Burglass, Jefferson, for Defendants/Appellants Samuel Shear a/k/a Sam Shear and Shirley Goodman Shear.
Thomas J. Lutkewitte, Angela C. Imbornone, Favret, Demarest, Russo & Lutkewitte, New Orleans, for Plaintiffs/Appellees Sylvia Joseph Shear, Alan Shear and Annetta Shear Krelitz.
Before BOWES, WICKER and DALEY, JJ.
BOWES, Judge.
Sylvia, Alan, and Annetta Shear filed suit in May of 1991 in the Twenty-Fourth Judicial District Court against Samuel (Sam) and Shirley Shear. Sylvia is the widow of Ben Shear; Alan and Annetta are his only children. Ben died on November 1, 1989. The plaintiffs, heirs of their father Ben J. Shear, alleged the following seven causes of action against Sam, brother of Ben and his wife, Shirley.
*1028 (1) Plaintiffs claimed payment as holders of a promissory note, executed by Sam and assigned to Ben, in the principal amount of $159,999.55, plus interest. The note was secured by the pledge of a collateral mortgage note in the principal amount of $100,000.00 identified with a collateral mortgage on property on Neyrey Drive acquired by Sam and Shirley. Plaintiffs alleged the note had not been paid since 1989.
(2) Plaintiffs, as joint owners of rental property with Sam and Shirley, claim accounting for and payment of one-half of the rent collected by Sam for a period of "at least" November 1, 1989 to August or September of 1990.
(3) A claim for accounting against Sam relative to diversion of funds belonging to Ben. It was asserted that Ben was the owner and operator of a sole proprietorship operating under various trade names, and that Sam endorsed a number of checks made payable to Ben or one of his businesses, diverting the funds to his own private accounts.
(4) Another claim for accounting, alleging that Sam transferred funds from Ben's business accounts to his own without authorization, in the total amount of $82,100.00.
(5) A claim for the balance due on equipment and merchandise sold by Ben to Sam, in the amount of $79,043.36.
(6) A claim for accounting based on the sale by Sam of some equipment owned by Ben. It was alleged that after Ben died, Sam removed equipment from the warehouse belonging to Ben and sold it, retaining the proceeds.
(7) A claim against Sam based on another promissory note in the amount of $163,608.86.
Sam filed an answer and reconventional demand, claiming that Ben's heirs appropriated the assets of a joint partnership between Ben and Sam, named Southern Equipment Leasing Company, and were accountable in both tort and contract. Sam also claimed reimbursement of $22,000.00 alleging that he advanced that amount for the purchase of the rental property referred to in plaintiff's second cause of action. Sam then filed a supplemental and amended answer with special defense and reconventional demand, alleging prescription of the plaintiffs' claims and asserting his own claim for unpaid wages, bonuses and commissions alleged to be in the amount of $207,064.00.
Plaintiffs filed an exception of prescription, urging the three year prescriptive period for actions involving the recovery of compensation for services rendered; an exception of no cause of action; and their answer, setting forth special defenses of set-off, lack of and failure of consideration.
By amended petition, plaintiffs named Rene Shear Rich as an additional defendant, claiming that Rich was a party to the conversion of funds (claim number three), to the sale of equipment (claim number six), and to the destruction of the accounting books and records. This last was an additional cause of action against all defendants, constituting claim number eight.
Plaintiffs filed exceptions of no cause and no right of action to both the original and the supplemental reconventional demands, alleging that the sole purpose of Southern Equipment was to provide a means to evade federal income taxes and was, therefore, unlawful and illegal, an agreement relating thereto thus being void and unenforceable; and that Sam had failed to establish the essential requirements for recovery under a theory of unjust enrichment.
Trial was held in this matter, with cause of action number three being severed for separate proceedings. Plaintiffs also consolidated causes of action numbers one and seven, asserting a claim for a single promissory note, recognizing that the 1985 note (cause of action number seven) was a renewal of the 1984 note (number one). The trial resulted in a judgment in favor of plaintiffs in the amounts stated below. The trial court in its Reasons for Judgment in favor of plaintiffs categorized the award as follows:

Combined Causes of Action # 1 and # 7 $100,000.00
Cause of Action #2 22,000.00
Cause of Action #4 79,043.36
Cause of Action #5 2,400.00
TOTAL $203,443.36[1]

*1029 VALIDITY OF APPEAL

The above judgment was granted on May 7, 1996, and the notice of judgement mailed on May 20. On May 24, plaintiffs filed a motion for a partial new trial, alleging that the judgment did not specifically recognize and maintain the lien resulting from pledge of a collateral mortgage note, and also that the judgement did not dismiss the reconventional demand of defendants. The motion for partial new trial was requested solely for that purpose, and did not seek to modify the monetary portion of the judgment.
Following oral argument, the partial new trial was granted on July 8, 1996. In the judgment, the court said specifically that it was granting the partial motion for new trial. The May judgment was modified only to allow for maintaining the lien requested by plaintiffs, and to dismiss the reconventional demand. The terms of the original judgment granting the $203,443.46 were repeated in the new judgment. That judgment was signed on July 8, and notice of judgment was sent on July 9. On July 11, defendants filed a petition to appeal the judgment of May 7.
La. C.C.P. art 1971 states:
A new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only. If a new trial is granted as to less than all parties or issues, the judgment may be held in abeyance as to all parties and issues.

The last sentence in this article has been interpreted by the Louisiana Supreme Court to mean that in the absence of clear and compelling reasons to do otherwise, the entire judgment is held in abeyance until all issues have been resolved by the trial court. Thurman v. Star Elec. Supply, Inc., 283 So.2d 212 (La.1973). The July judgment granting the partial new trial did not change the damage award granted to plaintiffs, nor was the damage award the subject of the motion for a new trial; rather, the second judgment merely reiterated the damage award, added the lien and dismissed the reconventional demand. Therefore, the May 7 judgment on damages was held in abeyance until July, at which time all issues were resolved by the trial court. Defendants appeal is timely. However, only the judgment of May 7 is before us on appeal.

ASSIGNMENTS OF ERROR
Defendants have assigned the following errors:
1. The trial court erred in ruling that causes of action one and seven, combined with two, four, five and six were admitted by defendant's counsel in his post trial memorandum.
2. The court erred in combining causes of action one and seven and then rendering judgment in the sum of $100,000.00 and in a subsequent judgment, recognizing a lien, privilege and security interest related to the debt.
3. The court erred in granting a judgment of $22,000.00 on claim number two.
4. The court erred in granting a judgment of $79,043.36 in claim number four.
5. The court erred in granting a judgment of $2,400.00 in claim number five.
6. The court erred in failing to grant the reconventional demand and failing to find that a partnership existed.
Plaintiffs answered the appeal, averring that the trial court erred in finding defendants liable for only $100,000.00 on claims one and seven, and to request attorneys fees of 25% on the principal and interest due.

FACTS
Alan Shear testified that he was previously employed at Ajax of Louisiana, a company owned solely by Ben. Ajax is a distributor for cold draft ice-making machines, selling and leasing ice-making machines. Following his father's death, Alan came to New Orleans[2] to take care of family business, including Ajax, as well as Ben's estate. After *1030 examining the records of the various business ventures owned by his father, Alan began to find discrepancies in the accounts and books. After some investigation, he and his family brought the present lawsuit.
Sam Shear is the brother of Ben, and had been employed at Ajax as general manager since the early 1960's; Rene Rich, Sam's daughter, was the office manager.
The remainder of the facts are best described by the trial court, as follows:
The history of the business relationships between Ben and Sam can be described as interesting and confusing. They never seemed to be concerned about cutting a legal corner, including non payment of income taxes until 1987 when they were apprised by the Internal Revenue Service that this was not an appropriate manner of doing business, especially a very profitable one.
Ben had a franchise to sell and repair ice making machines used in hotels, bars, restaurants, etc. The franchiser, Uniflow, would not permit Ben to lease these machines for obvious reasons. Ajax was the name of business.
In 1963, Ben asked Sam to come to New Orleans and work with him and Sam takes credit for solving the leasing problem. A company called Southern Equipment and Leasing Company ("Southern") was formed by ordering stationery with that name on it and opening a "partnership" bank account with Ben and Sam being designated as consignees.
They freely went into business in a variety of "paper" companies. "Selco" was another name for Southern.
Purchases of ice machines were always under fictitious names of other companies. The invoices were paid by Southern. These machines were owned by Ajax Leasing Company but Southern received the lease payments and disbursed sums to Ben and Sam disguised as "loans" or "transfers." Ben paid the expenses of the business which was situated in the same premises as Ajax. There was intended a 50-50 percent sharing of the net profits a/k/a known as "loans" or "transfers". Ben paid all expenses and took a tax write off.
Ben and Sam also were involved in several loans and co-ownership of real estate. This resulted in causes of actions numbers 1, 2, 3, 4, 5, 6 and 7.

STATEMENT OF REVIEW
In considering all of the evidence presented at the trial of this matter, it is apparent to this Court, as it was to the trial court, that to pursue the labyrinth of bookkeeping indulged in by Ben and Sam is an exercise in futility. The business' bookkeeping was so admittedly (and, to employ a euphemism) "fanciful," that we cannot base a finding on it. We conclude, as did the trial court, that we must base our determination as to the correctness of the trial court on the admissions at trial, in particular those of Sam, the bank records, and promissory notes. We shall address the assignments of error in the following order for the sake of convenience.

PRESCRIPTION
A threshold determination relative to the issue of prescription must be made.
An exception of prescription was filed by Sam as to counts one, five and seven and ultimately, on a second plea, as to all counts. Our review of the record discloses that the exception was not set for trial prior to the trial on the merits. Neither the pleadings, nor any minute entries, indicate that the exception was ever set for hearing. Defendant averred at the hearing on the motion for new trial that the exception of prescription "went to the merits"; however, the trial transcript does not disclose that this exception was before the court during the trial proceedings. Further, the record discloses that following rendition of the original judgment in May and the motion for a partial new trial, Sam filed another plea of prescription "only as a precautionary matter," on June 26, limited this time only to the promissory note claims. We note further that at that time, a motion setting the exception for hearing was included.
Considering the record as a whole, we cannot find that the issue of prescription was before the trial court at the *1031 time of trial. Where a party who has filed exceptions in the district court does not insist upon a trial and a ruling on his exceptions, they are deemed waived, and need not be considered by the court on appeal. Century Pools, Inc. v. Pinkstaff, 598 So.2d 1189 (La. App. 5 Cir.1992); see also Quinette v. Delhommer, 176 So.2d 399, 247 La. 1121 (La. 1965); Williams v. Vidrine, 330 So.2d 396 (La.App. 3 Cir.1976). Sam has argued the issue in brief, but has not filed the exception here. We have previously held that the peremptory exception of prescription, which must also be specially pleaded, "must be presented in a formal pleading and cannot merely be argued in brief." Cajun Elec. Power v. Owens-Corning, 580 So.2d 465 (La. App. 5 Cir.1991); Robertson Roofing & Siding, Inc. v. Dr. and Mrs. Samuel E. Greenberg, 96-107 (La.App. 5 Cir. 5/28/96), 693 So.2d 158.
Therefore, the issue of prescription is not before us as a defense to any claims of Sam.[3]

PROMISSORY NOTE
This was a judgment on claims number one and number seven, and involves assignment of error number two.
In connection with the claim on the promissory note, the following items were introduced into evidence:
(1) A promissory note dated December 26, 1984 in the amount of $159,999.95, executed by Sam Shear payable to the Bank of Louisiana, with principal and interest on the note maturing on March 26, 1985. That note was secured in part by a collateral mortgage note of Shirley and Sam Shear, dated March 29, 1984 in the principal sum of $100,000.00.[4]
(2) An Act of Endorsement and Sale of Note and Transfer of Collateral executed by the Bank of Louisiana on March 26, 1985. In that document, the 1984 note, as well as the mortgage note and collateral mortgage note, were sold, assigned and transferred to Ben. Sam testified at trial that he was present at that notarial act, and that it involved the transfer and assignment of the BOL indebtedness which was secured by the pledge, mortgage, and mortgage note on his residence.
(3) A second note, dated March 26, 1985, (the date the first note matured) executed by Sam Shear, payable to Ben Shear in the amount of $163,608.86.[5]
(4) A letter from the Bank of Louisiana (BOL) to Sam Shear, dated January 28, 1985, indicating that an original loan had been made to Soundies Operating Company in the amount of $310,000.00; principal payments had been made in the amounts of $77,395.45 and $72,605.00. According to the letter, a loan was made in Sam's name in the amount of $159,999.95, representing the balance due on the Soundies loan.
(5) Checks made out to Sylvia Shear by Sam noted as interest payments. The checks were from December, 1985 through September, 1989, and totaled $56,225.00.
(6) A stipulation by counsel for all parties states that the same consideration secured both the December 1984 note and the March 1985 note.
(7) Federal income tax returns indicating interest deductions taken by Sam on payments made to Sylvia.
(8) Bankruptcy schedules of Sam, listing the Estate of Ben Shear as a secured creditor with a first mortgage on his residence, in the amount of $175,000.00.
Counsel for plaintiffs stipulated at trial that there was but one indebtedness, and that the second note was "a renewal" of the first.
*1032 For purposes of this appeal, the salient facts proven in the trial court are these: a promissory note was executed by Sam in favor of Ben in the principal amount of $163,608.86. The only evidence of payment on this note were the checks made payable to Sylvia Shear designated as interest payments. Sam acknowledged in his testimony at trial that he did not pay the principal on the note. As the trial court found, Sam produced no proof that this debt had been canceled "by mutual understanding." "The Byzantine nature of their [Sam and Ben] dealings is not translatable as a legal defense which could overthrow the signed loans, deeds, and accountant's records."
We find no manifest error in such a determination by the trial court. However, the amount granted by the court on this claim in its reasons for judgment was $100,000.00.[6] However, we find that plaintiffs have proven an indebtedness owed to them, as heirs of Ben, in the principal amount of the note, $163,608.86, plus interest at the rate stated therein (2% over the certificate of deposit rate), plus, as further provided by the note, attorney fees. Although provided for in the note, attorney fees were not precisely designated. We have considered the volume of labor expended by the attorney for plaintiffs herein, which is obvious from the record, and we find that attorney fees in the amount of 20% to be reasonable.

ACCOUNTING FOR RENT
This was claim number two, and assignment of error number four. In connection with this claim, Sam admitted that he received the rent from the property in question (called the "Hessmer Farms property" by the parties) each month, in the sum of $600.00. He further admitted that he retained that money and did not distribute any of it to Ben. The period of time in which the rent was thus collected was from August of 1974 until December, 1989. The trial court found, in connection with this claim, that Sam owed Ben $22,000.00. Mathematically, the figure should be much more but appellees (Ben), in their answer to the appeal, made no request to increase it. Therefore, we can not do so. Sam testified that he paid the entire purchase price for the property in question, but again, there was no evidence to support this contention. The act of sale introduced into evidence at the trial shows clearly that the property was sold to Sam and Ben. An agreement relating to the ownership of this property, also introduced into evidence, shows Ben and Sam to each have an undivided 50% interest in the property. The agreement specifically states the parties are not partners and this was not a partnership agreement.
Sam assigns this as error, but does not discuss or brief it, other than to argue that it is error. Therefore, under the Uniform Rules of Court 2-12.4, we deem this assignment of error to be abandoned.

SALE OF EQUIPMENT
This is assignment of error number five. By this assignment of error, defendant contends the trial court misidentified claim number six as claim number five. Under "cause of action # 5" as designated by the trial court, the court awarded $2,400.00. Defendant contends that the amount of such award could only have issued from the sixth cause of action, which was the claim for accounting based on the sale by Sam of equipment owned by Ben. Defendant avers in brief that the judgment under that claim (number six) is very small and "probably is correct." Sam in fact admitted at trial as to the correctness of the allegations in cause of action number six.
In point of fact, it is apparent that the trial court made several labeling errors. That cause of action which the trial court labeled as number four was actually cause of action number five. Number five (as filed by the plaintiffs, see above) involved the claim for the balance due on equipment and merchandise sold by Ben to Sam in the amount of $79,043.36, the exact amount awarded by the court under the number "4". Cause of action number four (as filed by the plaintiffs, see above) involved a claim for accounting on funds allegedly transferred by Sam from *1033 Ben's business accounts to his own without authorization.
We note at this point that a judgment and reasons for judgment are two separate and distinct legal documents and appeals are taken from the judgment, not the written reasons for judgment. La. C.C.P. art. 1918; Ziegel v. South Cent. Bell, 93-547 (La.App. 5 Cir. 3/16/94), 635 So.2d 314; Succession of Velasquez-Bain, 471 So.2d 731 (La.App. 4 Cir.1985), writ denied, 476 So.2d 354 (La. 1985). Although the court did mislabel the claims in its reasons, it is the resulting final judgment on all the claims, and not the reasons therefore, which we must affirm, reverse, or amend on appeal. A mislabelling by the trial court in this protracted hearing with its voluminous exhibits and extensive record is understandable and cannot defeat a cause of action proven by the plaintiffs at trial.
Considering the admission by Sam at trial, the court correctly granted judgment in the amount of $2,400.00 for the sale of equipment owned by Ben.

SALE OF EQUIPMENT AND MERCHANDISE BY BEN TO SAM
Alan Shear testified that the accounts receivable for Ajax and Soundies showed an accounts receivable entry for Louisiana Cattle Company (owned exclusively by Sam) in the amount of $79,043.36. Sam testified that there was not a balance outstanding for these purchases:
I don't believe because the last purchases that were billed to the Louisiana Cattle Company Ben Shear asked that they be removed from the files and another set of invoices
* * * * * *
Q. Mr. Shear, I will ask you the question again. I understand your testimony that the debt may have been written off, but my question to you is was it ever paid afterwas it paid?
A. Which one are you speaking of?
Q. I'm talking about the debt owed by the Louisiana Cattle Company to Ajax for the equipment that it purchased in 1986.
A. It was never paid because it was subsequently billed to somebody else so as far as anybody was concerned it was nonexistent.
Invoices from Ajax to Louisiana Cattle Company for the sale of equipment were introduced at the trial. These invoices total $105,125.29. Considering Sam's testimony above, it is clear that the trial court correctly granted this item of damages. Although the reasons for judgment indicate the award on this item as $79,043.00, plaintiffs' answer to the appeal does not specify this as error or request amendment. According to La. C.C.P. art. 2133:
The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer.

Because appellee have failed to complain, we may not amend this portion of the judgment. See McTurner v. McTurner, 26,123 (La.App. 2 Cir. 9/21/94), 649 So.2d 1, rehearing denied, writ denied, 94-2876 (La.1/27/95), 650 So.2d 241; Liedtke v. Allstate Ins. Co., 405 So.2d 859 (La.App. 3 Cir.1981), writ denied, 407 So.2d 748 (La.1981).
Sam's defense to the above claim was chiefly one of prescription. However, we have found that the issue of prescription is not before us at this time. Therefore this item of damage is affirmed.

UNAUTHORIZED TRANSFER OF FUNDS
The trial court does not indicate in its reasons for judgment that any portion of the judgment included an award for this claim (number four). Again, appellees do not ask this Court in their answer to address this portion of their claim, and as above, we are without jurisdiction to entertain further inquiry as to this item of damages.
Because of our findings hereinabove, it is unnecessary to address the issue of whether a partnership existed between Sam and Ben in Southern Equipment.
*1034 For the foregoing reasons, the judgment appealed from is amended as follows:
On the promissory note dated March 26, 1985 the judgment is amended to reflect the principal amount due to be $163,608.36, plus interest as provided for therein and attorney fees of 20% of the total amount due.
In all other respects, the judgment is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] The action against Rene Shear was dismissed, and is not before this Court on appeal.
[2] The Shear family lived a great part of the year in Minneapolis, although a residence was maintained in New Orleans.
[3] Furthermore, the exception of prescription was heard on July 2, 1996 along with the motion for partial new trial. The July 8, 1996 judgment granting the partial new trial was silent as to the exception. However, a subsequent judgment was rendered July 11, 1996 dismissing the exception of prescription. The judgments of neither July 2, 1996 nor of July 11, 1996 were appealed. As discussed above, only the judgment of May 7, 1996 is before us on appeal.
[4] It was secured further by another mortgage note of persons not parties to these proceedings.
[5] It is significant that there is no maturity date on this note so as to give rise to the defense of prescription discussed by Sam. Nevertheless, see our determination on prescription, above.
[6] $100,000.00 is the amount of the collateral mortgage.