GRAVOIS, J.
*1169 Appellant, American Multi-Cinema, Inc., a/k/a AMC Theaters, appeals a judgment of a Louisiana Board of Tax Appeals judge which granted a motion for summary judgment filed by Newell Normand, Sheriff and Ex-Officio Tax Collector for the Parish of Jefferson, and denied AMC's motion for summary judgment, thereby denying AMC's request for a refund of parish sales taxes for the taxing periods of June 1, 2011 through December 31, 2013 and January 1, 2014 through September 30, 2014 that AMC claims it overpaid to the Sheriff as the taxing authority.[1] AMC claimed that its point-of-sale software mistakenly treated virtual rewards issued to members of its loyalty program, the "Stubs Rewards Program," as "taxable cash receipts," rather than as cash discounts or retailer-issued coupons, resulting in AMC allegedly remitting an overpayment of sales taxes to the Parish. Neither the Sheriff nor the Board of Tax Appeals judge agreed with AMC's position, both denying AMC's request for a refund, though each for different reasons. Upon de novo review, for the following reasons, we affirm the judgment of the Board of Tax Appeals judge granting the Sheriff's motion for summary judgment and denying AMC's motion for summary judgment, finding no error, omission, or mistake of fact in AMC's calculation, collection, and remittance of the sales taxes in question to the Sheriff, or in the Sheriff's determination of AMC's tax liability on its Stubs Rewards Program, for the taxing periods in question.
FACTS AND PROCEDURAL HISTORY
AMC Theaters is a business headquartered in Leawood, Kansas, operating movie theaters nationwide, with three locations in Jefferson Parish.[2] Sales of goods and services (concessions and movie tickets) are subject to parish sales and use taxes pursuant to La. R.S. 47:301. Pertinent to this case, on April 1, 2011, AMC introduced a loyalty rewards program to its patrons called the "Stubs Rewards Program," which allowed those patrons who purchased a Stubs Rewards membership for $ 12 per year to accrue "virtual rewards" on the purchases of goods and services at AMC's theaters. For every $ 100 Stubs Rewards members spent on goods and services at AMC, they accrued a virtual reward of $ 10 that they could use towards the future purchase of goods and services at the theaters.[3] During the taxing periods in question, the $ 10 virtual reward could be redeemed in any amount of the patron's choosing, with the unused portion of the reward, if any, staying in the member's virtual account to be used towards a future purchase.[4]
*1170 For the taxing periods at issue, AMC used a "tax inclusive" pricing structure, in which the ticket or concession was sold for a posted or fixed sales price that included all applicable state and local sales taxes, as opposed to a "tax exclusive" pricing structure, in which the ticket or concession is sold for a posted or fixed sales price upon which the sales tax is then computed as an additional charge to be paid by the purchaser.[5] This tax inclusive pricing structure was used for all transactions during the taxing periods at issue, whether or not the patron was a Stubs Rewards member. In a tax inclusive pricing structure, the sales tax to be remitted to the taxing authority is calculated by dividing the sales price by 1 plus the tax rate, and then subtracting that result from the sales price.[6]
In 2011, not long after the introduction of its Stubs Rewards Program, AMC determined that its point-of-sale software system was treating the redeemed Stubs Rewards as taxable cash receipts, rather than as cash discounts or retailer issued coupons. In a transaction involving cash receipts, sales taxes are computed on the total amount of the sale prior to deducting the cash receipt (unadjusted sales price), and the customer pays the sales taxes computed on the unadjusted sales price. In a transaction involving a discount or retailer issued coupon, the discount or coupon amount is deducted from the sales price (adjusted sales price) and sales taxes are then computed and remitted on the adjusted sales price, in accordance with La. R.S. 47:301(13)(b)[7] and the Louisiana Administrative Code, Title 61, Part I, § 4301(C) - Sales Price - (a)(viii)(b), infra , n. 14.
In its review, AMC determined that its treatment of the Stubs rewards was a "mistake or error" in its own software system, as per the sales tax "refund" statute, La. R.S. 47:337.77(B)(3).[8] AMC claimed that its point-of-sale system had computed the sales taxes on the unadjusted sales prices, yet from its Stubs Rewards members it had collected only the sales taxes computed on the adjusted sales prices, which caused AMC to remit to the Parish, allegedly from its own funds, the excess sales taxes which were the difference between the taxes on the unadjusted sales prices and the taxes on the adjusted sales prices. Following this determination, on May 2, 2012, AMC engaged the accounting firm of Ernst & Young, LLP to audit its accounting and sales records to *1171 determine the amount of sales taxes it had allegedly erroneously remitted to the Sheriff. In May, 2015, based upon reports generated by Ernst & Young, AMC applied to Jefferson Parish for a refund of sales taxes in the total amount of $ 106,290.38 for the aforementioned taxing periods for AMC's Jefferson Parish locations.[9]
On June 29, 2015, the Sheriff commenced an audit of AMC's three Jefferson Parish locations for sales/use taxes, for the audit period of June 1, 2011 through May 31, 2015.[10] In audit reports dated November 2, 2015, the auditors disallowed AMC's tax refund claims, finding that AMC had properly treated the Stubs Rewards as taxable cash receipts, and recommended that the Sheriff deny the refund requests. The Sheriff denied the refund requests by letters to AMC dated December 23, 2015.[11]
Thereafter, AMC timely filed an "Appeal of Disallowance of Tax Refunds" with the Louisiana Board of Tax Appeals. Following motion practice and discovery, the parties filed cross-motions for summary judgment. After a hearing on the cross-motions for summary judgment, the Board of Tax Appeals judge rendered a judgment on March 18, 2018 that granted the Sheriff's motion for summary judgment, denied AMC's motion for summary judgment, and denied AMC's Petition for Refund, thereby denying AMC's requested refunds. In undated written reasons for judgment, the judge provided that AMC's requests for refunds were denied on the basis that the evidence showed that AMC's patrons, not AMC, had paid the disputed amount of excess sales taxes, and thus no tax refunds were due to AMC. The judge's written reasons did not explicitly address the Sheriff's audit finding that the Stubs Rewards were taxable cash receipts. This timely appeal followed.[12]
On appeal, AMC argues that there is no genuine issue of material fact, and as a matter of law, AMC's Stubs Rewards are cash discounts that reduce the taxable sales price and that the judge erred in concluding that AMC had not met its burden of proof that it was entitled to the tax refunds requested. AMC further argues that the Board of Tax Appeals judge erred in concluding that AMC's tax inclusive pricing model caused AMC's customers, rather than AMC, to make the erroneous overpayment of taxes. In this regard, AMC argues that: a) under a tax inclusive pricing model, the vendor (not the customer) accrues and pays the tax; and b) AMC's overpayments are not taxes paid by customers, but rather, are AMC's own funds. Finally, AMC argues that the judge erred in applying the tax principles incorrectly, or in applying the tax principles that have no application to a tax inclusive pricing model.
The Sheriff, in brief, argues that the evidence is clear that AMC's Stubs virtual reward is a taxable cash receipt, based upon AMC's actual treatment of the reward, both in its point-of-sale software and in its patrons' individual reward accounts, as well as in statements AMC made in its Stubs Rewards Program terms and conditions disseminated to members. The Sheriff further cites to evidence of actual transactions *1172 from the refund periods that its auditor considered, furnished to the Sheriff by AMC during discovery, that show the sales taxes were properly computed and that AMC's Stubs Rewards members rather than AMC paid the sales taxes AMC now claims should be refunded.
LAW AND ANALYSIS
After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. King v. Illinois Nat. Ins. Co. , 08-1491 (La. 4/3/09), 9 So.3d 780, 784.
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
Appellate courts review summary judgments de novo using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Pizani v. Progressive Ins. Co. , 98-225 (La. App. 5 Cir. 9/16/98), 719 So.2d 1086, 1087. A de novo review or an appeal de novo is an appeal in which the appellate court uses the trial court's record, but reviews the evidence and law without deference to the trial court's rulings. Wooley v. Lucksinger , 06-1140 (La. App. 1 Cir. 12/30/08), 14 So.3d 311, 352 ; Sarasino v. State through Department of Public Safety and Corrections , 16-408 (La. App. 5 Cir. 3/15/17), 215 So.3d 923, 927. The decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case. Muller v. Carrier Corp. , 07-770 (La. App. 5 Cir. 4/15/08), 984 So.2d 883, 885.
Both parties agree that the substance of a transaction, not its form, controls for the purpose of classifying a transaction as taxable or not. J & B Pub. Co. of La., Inc. v. Secretary, La. Dept. Rev. & Taxation , 34,105 (La. App. 2 Cir. 12/15/00), 775 So.2d 1148.
On appeal, AMC first argues that there is no genuine issue of material fact, and as a matter of law, AMC's Stubs Rewards are cash discounts that reduce the taxable sales price and that the judge erred in concluding that AMC had not met its burden of proof that it was entitled to the tax refunds requested.
Upon review of the briefs and the record, we find that the germane issue in this case is whether the Sheriff properly categorized the Stubs virtual reward as a "taxable cash receipt," instead of a cash discount or retailer issued coupon, as per La. R.S. 47:301(13)(b) as claimed by AMC. If the Stubs virtual reward is a taxable cash receipt, then AMC is due no refund of sales taxes if sales taxes were properly computed and remitted upon the total purchase price.
La. R.S. 47:301(13)(a) defines the "sales price" that is subject to state and local sales taxes as "the total amount for which *1173 tangible personal property is sold ... provided that cash discounts allowed and taken on sales shall not be included." Louisiana Administrative Code, Title 61, Part I, § 4301(C) - Sales Price -(a)(viii) provides that "[i]n cases where all or a part of the purchase price of tangible personal property is paid to the selling dealer by the presentation of a coupon, the determination of the taxable sales price will depend on the type of coupon that is presented." La. R.S. 47:301(13) and the Louisiana Administrative Code distinguish between "manufacturer's coupons," which do not reduce the taxable purchase price,[13] and the "retailer's own coupons," which do.[14] Taxable cash receipts, however, are not specifically defined in Title 47, the Administrative Code, or case law. It is clear, however, that sales taxes are due to the taxing authorities on both tax inclusive and tax exclusive transactions, as the sales tax statute does not mention the different pricing structures. The difference between the two pricing structures is the mathematical formula used to determine the amount of taxes to be remitted.
The Sheriff, in denying AMC's request for the tax refunds, found in its November 2, 2015 audit reports that the Stubs virtual reward did not function as a discount or a retailer issued coupon, because the Stubs member could use the reward in any increment it wished, to-wit:
On April 1, 2011, AMC released a new rewards program to its customers, AMC Stubs. Customers pay a fee to join the AMC Stubs program for an entire year. For that initial fee, each AMC Stubs member receives a $ 10 AMC Stubs Reward for every $ 100 spent. These rewards credits can be used like cash to purchase tickets and concessions in the theater. A customer has the ability to redeem any amount of the reward.
Prior to October 2014, the taxpayer utilized fixed pricing with a tax inclusive system for the sales of admissions and concessions.
During the refund period, AMC customers paid the sales tax on the total, unadjusted purchase price of a ticket before the stubs credit was deducted. Because the reward could be used in any increment chosen by the member, the stubs credit is not the same as a discount .
(Emphasis added).
Jeanine Theriot, the audit manager with the Sheriff's Bureau of Revenue and Taxation who performed the audits of AMC's sales tax records for the Sheriff in 2015, examined transactions that AMC submitted to the Sheriff pursuant to the audits. Ms. Theriot's affidavit, submitted with the Sheriff's motion for summary judgment, explained the audit procedure and described the evidence she examined and which formed the basis for her recommendation *1174 that AMC's refund requests be denied.[15] Ms. Theriot concluded that AMC's position that it had paid the disputed taxes was not supported by the published AMC Stubs Programs Terms and Conditions, which failed to use terms such as "coupon" or "discount."
Ms. Theriot also found that AMC's position that the Stubs virtual reward was a coupon or discount was inconsistent with its treatment of the Stubs virtual reward, as it allowed customers to apply the reward to a transaction in any amount they chose, and retain unused rewards for future use. These practices, she attested, were inconsistent with a typical coupon which was either for a fixed amount or percentage, and which also typically did not allow a customer to retain an unused balance thereof for future use.
Ms. Theriot also noted that the AMC Stubs Program Terms and Conditions provided that "Rewards and other benefits of the Program may be taxable to the Member where required by law," a provision she opined made sense only if a member was using his rewards as a form of payment rather than a discount or coupon, which reduces the tax base of the purchase price.
Ms. Theriot also explained in her affidavit that she examined actual Stubs rewards transactions submitted by AMC to the auditor from the taxing periods in question. In particular, her affidavit noted that she examined several Stubs transactions from July 14, 2014, involving both movie tickets and concessions. Upon examination of these transactions, she found that AMC did not apply virtual Rewards account credits to purchase transactions in a manner consistent with the proper use of discounts or retailer issued coupons. Ms. Theriot noted that AMC allowed Stubs Rewards members to use their virtual rewards to pay the entire tax inclusive purchase price, which would not have been allowed under state law if the rewards were discounts or retailer issued coupons. Ms. Theriot described three such actual sample transactions in her affidavit, finding that in each instance, AMC allowed a Stubs virtual reward to be redeemed in an amount that covered all or part of the portion of the purchase price attributable to the tax on the transaction, which was consistent with the treatment of the Stubs virtual reward as a form of payment that did not operate as a discount or retailer issued coupon.[16]
AMC argues, however, that the Stubs program meets "accepted criteria" to qualify as a cash discount, citing in brief to a table it created from information apparently contained in tax publications from the states of Minnesota, Missouri, New York, and Washington. AMC also included this table in its summary judgment submission to the judge. While the information in these publications from other states might be related to the subject matter in dispute, they are not binding on the Sheriff, the Parish taxing authorities, or the courts of this State.[17] [18]
*1175 Accordingly, we find that the evidence submitted with the Sheriff's motion for summary judgment and the applicable law support the conclusion that the Stubs rewards were in fact, during the refund periods in question, applied correctly as a taxable cash receipt that did not reduce the sales price upon which sales tax was to be calculated and remitted.
AMC also argues that the Board of Tax Appeals judge erred in concluding that AMC's tax inclusive pricing model caused AMC's customers, rather than AMC, to make the erroneous overpayment of taxes. AMC argues that under a tax inclusive pricing model, the vendor (not the customer) accrues and pays the taxes, the vendor bearing the risk that its profit margin will be impacted by increases in either the tax rate or the vendor's cost of an item. Accordingly, AMC argues, AMC's "overpayments" are not taxes paid by customers, but rather, are AMC's own funds.
AMC's argument in brief on this issue contains no reference to any actual Stubs Rewards transaction occurring during the taxing periods, or one that was examined by the auditor (Ms. Theriot) from the taxing periods. This argument is also premised upon AMC's position that the Stubs virtual rewards was a discount or coupon, rather than a taxable cash receipt, as we have found above. Therefore, having found no error in the treatment of the Stubs virtual rewards, and therefore no overpayment in the amount of taxes calculated and remitted by AMC, we find that AMC is not entitled to relief in this regard.[19]
Finally, AMC also argues that the Board of Tax Appeals judge erred in applying tax principles incorrectly, or in applying tax principles that have no application to a tax inclusive pricing model. AMC argues that the judge based his erroneous application of tax principles on a mistaken reliance on two cases involving tax exclusive pricing regimes or otherwise non-analogous principles, "plucking" these statements of law from those cases.
The statements AMC refers to are contained in the judge's written reasons for judgment. A judgment and reasons for judgment are two separate and distinct legal documents and appeals are taken from the judgment, not the written reasons for judgment. La. C.C.P. art. 1918. Ziegel v. S. Cent. Bell , 93-547 (La. App. 5 Cir. 3/16/94), 635 So.2d 314, 316. On appeal, the court of appeal reviews judgments and, where the court of appeal believes that the trial court reached the proper result, the judgment will be affirmed. Id. This Court is not bound to regard or apply principles that a lower court enunciates in written reasons for judgment, and thus, the judge's written reasons for judgment in this matter do not provide a basis for finding reversible error. Upon review, we find that the judge's result, the denial of AMC's refund claim, was correct because we find that the Stubs rewards were properly treated by both AMC's point-of-sale software and the Sheriff as a taxable cash receipt, and that sales taxes were properly remitted.
*1176 For the foregoing reasons, we find that AMC's arguments on appeal are without merit, and accordingly, affirm the judgment under review.
CONCLUSION
Finding upon de novo review that no genuine issues of material fact remain and that the Sheriff is entitled to judgment as a matter of law, we affirm the judgment of the Board of Tax Appeals judge granting the Sheriff's motion for summary judgment and denying AMC's motion for summary judgment, finding no error, omission, or mistake of fact in AMC's calculation, collection, and remittance of the sales taxes in question to the Sheriff, or in the Sheriff's determination of AMC's tax liability on its Stubs Rewards Program, for the taxing periods in question.
AFFIRMED

At the hearing of this matter before the Board of Tax Appeals judge, the parties noted that Mr. Normand was no longer Sheriff, having been succeeded by Joseph Lopinto. However, the record fails to show that a formal substitution of parties was made.

These locations are in Elmwood, Clearview Mall, and on the Westbank.

Goods and services include movie tickets and concessions.

Other benefits of Stubs Rewards membership include "upgrades" of certain concessions and the waiver of certain online ticketing fees. The Stubs virtual rewards expired 90 days from the date of issuance. Other restrictions of the Stubs Rewards Program are not pertinent to the issues in this case.

AMC changed to a tax exclusive pricing structure on October 1, 2014, after the taxing periods at issue in this appeal.

By way of example, assuming a $ 10 sales price with 8% tax, in a tax inclusive transaction, the sales tax to be remitted by AMC (divided between state and local taxing authorities) would be 74 cents ($ 10 - 10/1+.08 = 0.74 or 74 cents). The customer pays $ 10.00, with AMC retaining $ 9.26. In a tax exclusive transaction, 8% tax is collected on top of the $ 10 purchase price, resulting in a customer paying $ 10.80, with AMC retaining $ 10.00 and remitting sales taxes of 80 cents.

La. R.S. 47:301(13)(b) provides:
The term "sales price" shall not include any amount designated as a cash discount or a rebate by the vendor or manufacturer of any new vehicle subject to the motor vehicle license tax. For purposes of this Paragraph "rebate" means any amount offered by a vendor or manufacturer as a deduction from the listed retail price of the vehicle.

La. R.S. 47:337.77(B)(3) provides:
B. The collector shall make a refund of each overpayment where it is determined that:
* * *
(3) The overpayment was the result of an error, omission, or a mistake of fact of consequence to the determination of the tax liability, whether on the part of the taxpayer or the collector.

Despite its claim that since 2011 it had believed it was mistakenly remitting too much sales taxes to the Parish, AMC did not pay the disputed taxes under protest as per La. R.S. 47:337.77 for either of the taxing periods at issue in this case.

Occupational license tax and chain store tax were also included in this audit.

The record contains three audit reports, one for each theater location in the Parish, as well as three refund denial letters.

La. R.S. 47:1435 provides that the courts of appeal shall have exclusive jurisdiction to review the decisions or judgments of the Board of Tax Appeals.

Louisiana Administrative Code, Title 61, Part I, § 4301(C) - Sales Price - (a)(viii)(a) provides:
Manufacturer's coupons that the selling dealer accepts from the customer and can be redeemed through a manufacturer or coupon agent are not allowed as a reduction of the sales price. Because the retailer's total compensation includes the amount paid by the customer after presenting the coupon and the amount reimbursed by the manufacturer for the coupon's face value, the tax is based on the actual selling price of the item before the discount for the coupon.

Louisiana Administrative Code, Title 61, Part I, § 4301(C) - Sales Price - (a)(viii)(b) provides:
The retailer's own coupons, which the selling dealer is unable to redeem through another party, provides a cash discount that can be excluded from the sales price. The sales tax on a sale involving this type of coupon will be computed on the price paid after an allowance for the selling dealer's coupon discount.

The audit reports, referenced in Ms. Theriot's affidavit and also submitted with the Sheriff's motion for summary judgment, noted that due to the volume of concession and admission sales during the refund periods, the parties agreed that the auditors would review four months of concession and admission sales to verify that the correct tax was collected and remitted to the Sheriff, and AMC's sales invoices for the months of August 2011, February 2012, May 2013, December 2014, and April 2015.

AMC, in brief, objects to these transactions as inadmissible hearsay. However, the Sheriff points out that AMC provided these transactions to the Parish pursuant to the audits.

It does not appear that AMC submitted into evidence to the judge the other states' publications themselves, but rather submitted only tabulated material AMC claimed was contained therein.

However, the three audit reports (not Ms. Theriot's affidavit) stated that the auditors visited each of the three theaters in July and August of 2015, buying movie tickets and concessions with Ms. Theriot's Stubs Rewards membership. These transactions were not, however, from the refund period and were after AMC changed to a tax exclusive pricing structure. As such, we find that these "example transactions" noted in the audits were not relevant evidence upon which to determine the merits of this dispute.

AMC claims in brief that the undisputed summary judgment evidence established that it never collected taxes from its customer. This is incorrect, however. Even in a tax inclusive pricing structure, AMC collected sales taxes from its customers: the amount charged by AMC and paid by the customer included sales taxes, which are then calculated according to the formula noted above and remitted by AMC to the Sheriff.