HANS J. LILJEBERG, Judge.
UPlaintiffs, Gina Wiltz, wife of, and Timothy Wiltz, on behalf of their minor son, *764 Ryan Wiltz, and defendants, Winn-Dixie Montgomery, Inc. and Meraux Food Store, Inc., appeal the judgment of the trial court. For the following reasons, we amend the judgment, affirm in part as amended, and reverse in part.

Proceedings Below

In this consolidated action, plaintiff parents, Gina and Tim Wiltz, Cynthia and Glen Gabb, and Tina Tommaseo,[1] individually and on behalf of their minor teenagers, brought a negligence action against defendants, Winn-Dixie Montgomery, Inc. (“Winn-Dixie”), Meraux Food Store, Inc. (“Meraux”), Brothers Petroleum, LLC (“Brothers”), Alex Chevron, Inc. (“Alex Chevron”), Bogue Chitto Canoeing & Tubing Center, Inc. (“Bogue Chitto”), and their respective insurers. Plaintiffs sought damages for the wrongful deaths of their minor children, Rachel |fiGabb, Brian Lafontaine, and Charie Billiot and for injuries sustained by their minor son, Ryan Wiltz, in a single-vehicle crash, where the minor driver, Brian Lafontaine, was intoxicated. Plaintiffs contended that the defendant retailers illegally sold alcohol to minors that contributed to Brian Lafontaine’s intoxication and subsequent crash following a day of tubing on the Bogue Chitto River. Plaintiffs further urged that Winn-Dixie negligently permitted the minors to possess and/or consume alcohol on its premises, and maintained that Bogue Chit-to failed to supervise the minors’ activities on the river and afterwards. Alex Chevron and Bogue Chitto settled, as did Byron Lafontaine, individually and on behalf of Brian Lafontaine, and Tommy Tommaseo.[2] Brothers was dismissed from the suit on summary judgment.
Plaintiffs proceeded to a jury trial against Winn-Dixie and Meraux. The jury rendered a unanimous verdict in favor of plaintiffs, assigning 30% fault to the minor driver, Brian Lafontaine; 22.5% fault to Meraux; 22.5% fault to Alex Chevron; 15% fault to Bogue Chitto; and 10% fault to Winn-Dixie. Ultimately, the jury concluded that the alcohol consumed on the tubing trip came from only two sources: Meraux and Alex Chevron. While the jury did not find that Winn-Dixie sold alcohol to any minors, the jury did hold Winn-Dixie liable for negligently permitting the minors to possess and/or consume alcohol on its premises.
Post-trial, Gina and Timothy Wiltz, on behalf of Ryan Wiltz, (the ‘Wiltzes”) and Meraux moved for judgments notwithstanding the verdict, which the trial court denied. The trial court additionally denied Winn-Dixie’s motion for new trial. | fiWinn-Dixie and Meraux appeal the trial court’s judgment of liability. On cross-appeal, the Wiltzes seek increased general damages on behalf of Ryan Wiltz.

Facts

On August 21, 2005, at approximately 8:00 a.m., a group of approximately 35-40 teenagers, in ten to 20 vehicles, met in the Winn-Dixie parking lot located in the Park Plaza Shopping Center on Paris Avenue in Chalmette, Louisiana, to pool their alcohol prior to a day of tubing on the Bogue Chitto River. Most of the teenagers resided and attended high school in New Orleans East and the tubing trip was planned *765 in celebration of the start of their senior year.
One teenager testified that he was blown away by the amount of alcohol in the parking lot and another testified that there was too much beer available for the number of teenagers to consume on the trip. Testimony varied as to whether the teenagers consumed alcohol in the parking lot. Once the alcohol was pooled together, there was no way to tell which alcohol belonged to whom. The teenagers remained in the Winn-Dixie parking lot for approximately one hour.
Jamie Rutland, a Winn-Dixie employee and fellow student of the teenagers in the parking lot (and who was invited on the tubing trip), testified by deposition that when she arrived for work on the morning of August 21, 2005, she observed 45-50 people in the parking lot with cases of beer in the bed of a white truck along with ice chests. She testified that it appeared that Candace Pizzalato, a minor, exited Winn-Dixie with a case of beer. Jamie explained that upon entering the store, she immediately alerted her supervisor, Melanie, that an underage girl just exited the store with beer. She was unaware what action the supervisor took after apprising her of the situation outside, but expected that the supervisor would call the police.
|7After approximately one hour, a caravan of approximately ten vehicles traveled to the Bogue Chitto Canoeing & Tubing Center. Brian Lafontaine, 17, drove Chrissie Billiot, 15, Charie Billiot, 16, and Rachel Gabb, 16. Chris Acosta, 17, drove Jared Heninger, 17, Ryan Wiltz, 16, and two girls. Upon arrival at the tubing center, the teenagers admitted lying about their ages to check in at the tubing center.[3] While waiting for the bus to take them to the river, the teenagers funneled and “shot-gunned” beer for approximately 20 minutes. Bogue Chitto employees partook in the drinking with the teenagers. The teenagers floated on the river for approximately five to six hours, drinking from whichever ice 'chest was closest. Testimony was given that Brian Lafon-taine did not have his own ice chest, and was thrown cans of beer throughout the day from whichever ice chest he was nearest. At the conclusion of the trip, Bogue Chitto employees advised the teenagers of routes to take to avoid sobriety check points.
Chrissie Billiot testified at trial that she and Rachel Gabb finished tubing ahead of Brian Lafontaine and went to Lafontaine’s vehicle to rest while waiting for the group to finish. Ryan Wiltz and Charie Billiot next came to the car together to wait for Lafontaine to leave.[4] Brian Lafontaine was noticeably intoxicated and Chris Acosta attempted to prevent Lafontaine from driving. Before anyone could stop him, Lafontaine jumped into his vehicle and took off quickly with Chrissie, Rachel, Ryan, and Charie already in the car. Chrissie sat in the front, passenger seat with the others seated in the backseat. Brian Lafontaine sped away from his friends, driving intoxicated and traveling approximately ten miles per hour over the speed limit (66/55). At approximately 4:45 p.m., Brian Lafontaine crashed his l^vehicle only a few miles away from the Bogue Chitto Canoeing & Tubing Center on Louisiana Highway 16 in between St. Tammany and Washington Parishes.
*766 Louisiana State Trooper Lorenzo Ray-ford testified that Lafontaine’s vehicle traveled eastbound on LA 16. The vehicle swerved toward the center line, and swerved back to the right fog lines, staying within the lines, before leaving the road, crossing oncoming traffic, and striking a small tree to the left. Trooper Rayford testified that he attributed the accident “to alcohol and pretty much the condition of the driver” ... “carelessness and alcohol.” A toxicologist' expert, William J. George, testified that, “in his opinion ... [alcohol] would have been a significant contributing factor.”
None of the vehicle’s occupants were responsive at the scene. Rachel Gabb was pronounced dead at the scene. Charie Billiot was transported to LSU Medical Center, where she was pronounced dead at 6:34 p.m. Brian Lafontaine was transported to Lakeview Hospital, where he later died. Lafontaine’s blood was drawn at the hospital revealing a blood alcohol content of ,09%.[5] Chrissie Billiot was also transported to Lakeview with moderate injuries and gave a statement to Louisiana State Police. Chrissie wore a seat belt and was left without permanent injury. Ryan Wiltz was initially transported to Charity Hospital before being transferred out of state due to Hurricane Katrina. He suffered a severe brain injury resulting in permanent brain damage and paralysis on his left side.

Assignments of Error

On appeal, Winn-Dixie' and Meraux raise several assignments of error. Mer-aux additionally adopts Winn-Dixie’s claims where applicable. Therefore, we will address defendants’ assignments of error together.

19Winn-Dixie Liability

In negligence cases, Louisiana employs a duty-risk analysis in determining whether to impose liability under La. C.C. art. 2315.[6] Rando v. Anco Insulations Inc., 08-1163 (La.5/22/09), 16 So.3d 1065, 1086; Roberts v. Benoit, 605 So.2d 1032, 1042 (La.1991). In order for liability to attach under a duty/risk analysis, a plaintiff must prove five sepárate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). Rando, supra, citing Davis v. Witt, 02-3102 (La.7/2/03), 851 So.2d 1119, 1127.
In the instant matter, the jury did not find that Winn-Dixie sold alcohol to any minors on the morning of the tubing trip. The jury, however, did hold Winn-Dixie 10% liable to plaintiffs for negligently permitting the minors to possess and/or consume alcohol on its premises, finding that said negligence caused or contributed to the damages plaintiffs sustained.
Winn-Dixie asserts on appeal that the jury’s finding of liability was manifestly *767 erroneous because plaintiffs did not prove that the breach of Winn-Dixie’s legal duty to monitor its parking lot was a legal cause of plaintiffs’ injuries. Under the Responsb ble Vendor Program (“RVP”), enforced by Louisiana Alcohol and Tobacco Control (“ATC”), it is prohibited for a Class B licensee vendor of alcohol to allow minors to possess or consume alcoholic beverages on its premises. 11flSee also La. R.S. 26:90. Winn-Dixie does not challenge the jury’s finding that it negligently permitted minors to possess and/or consume alcohol on its premises in violation of the said legal duty under the RVP. Winn-Dixie argues, rather, that the damages plaintiffs sustained were not within the scope of that duty and were not a foreseeable consequence of its negligence.
Therefore, the critical issue before us is whether the risk of harm sustained by plaintiffs was contemplated or within the scope of protection of Winn-Dixie’s legal duty to monitor its parking lot to prevent the possession and/or consumption of alcohol by minors on its premises as required by the RVP.
In discussing the scope of protection of a duty, the Louisiana Supreme Court has found that there is no “rule” for determining the scope of duty. Roberts, supra at 1044. “Regardless if stated in terms of proximate cause, legal cause, or duty, the scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty.” Rando, supra at 1088; Roberts, supra at 1044, citing Edwards v. State, 556 So.2d 644, 648-49 (La.App. 2nd Cir.1990). Stated differently, the inquiry is “whether the enunciated rule or principle of law extends to or is intended to protect this plaintiff from this type of harm arising in this manner.” Rando, supra; Faucheaux v. Terrebonne Consol. Gov’t, 615 So.2d 289, 293 (La.1993); Roberts, supra at 1045. Although “the determination of legal cause involves a purely legal question,” “this legal determination depends on factual determinations of foreseeability and ease of association.” Rando, supra at 1088, citing Todd v. State, Dept. of Social Services, 96-3090 (La.9/9/97), 699 So.2d 35, 39.
When a duty is imposed by statute, the court must attempt to interpret the legislative intent as to the risk contemplated by the legal duty, often resorting to the court’s own judgment of the scope of protection intended by the legislature. Cormier v. T.H.E. Ins. Co., 98-2208 (La.9/8/99), 745 So.2d 1, 7; citing Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970); Dixie Drive It Yourself System New Orleans v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). The same policy considerations which would motivate a legislative body to impose duties to protect from certain risks are applied by the court in making its determination. Hill, supra at 622. Courts consider various policy factors that the legislature might consider, such as whether the imposition of a duty would result in an unmanageable flow of litigation; ease of association between the plaintiffs harm and a defendant’s conduct; economic, social, and moral implications on similarly situated parties; the nature of defendant’s activity; the direction in which society and its institutions are evolving; and precedent. See generally Meany v. Meany, 94-0251 (La.7/5/94); 639 So.2d 229, 233; Pitre v. Opelousas Gen. Hosp., 530 So.2d 1151 (La.1988); Entrevia v. Hood, 427 So.2d 1146 (La.1983).
The extent of protection owed by a defendant to a plaintiff is made on a case-by-case basis to avoid making a defendant an insurer of all persons against all harms. Rando, supra at 1093, citing Todd, supra at 39; Hill, supra at 622.
*768 In the instant assignment of error, Winn-Dixie asks this Court to find no connectivity or ease of association between the provisions of the RVP, requiring Winn-Dixie to prohibit minors from possessing or consuming alcoholic beverages on its premises as a Class B licensee, and the protection against drunk-driving related harm. We decline to so find, especially in the case of minors.
Statutory and jurisprudential precedent clearly establish a substantial association between the prohibition of possession and consumption of alcohol by minors and drunk-driving related harm.
|12In Manuel v. State, 95-2189 (La.3/8/96), 692 So.2d 320, the Louisiana Supreme Court, on rehearing, upheld the constitutionality of several Title 14 statutes,[7] which raised the minimum drinking age and prohibited minors from purchasing, consuming, or possessing alcohol, finding that the laws substantially furthered an appropriate and legitimate state interest in improving highway safety. In doing so, the Court recognized a substantial relationship between laws that prohibit minors from possessing or consuming alcohol in public settings and the danger of minors driving while intoxicated. Id. at 345. The Court explicitly stated that the purpose of the statutes “is to curtail the ready availability of alcohol to inexperienced drivers and drinkers in this age group.” Id. at 347. The Court further elaborated that “[t]he real danger at which the minimum drinking age law is aimed is the situation of under-aged persons’ buying drinks at bar rooms and convenience stores before driving around in their vehicles. This is the setting in which the greatest danger of accidents is presented.” Id.
The Supreme Court, in Berg v. Zummo, 00-1699 (La.4/25/01), 786 So.2d 708, further recognized the public policy of this state in enacting legislation specifically pertaining to alcohol and minors. The Court stated,
[The legislation] further evidences the public policy of this state to prohibit the sale of alcohol to minors and to protect minors and the general public from the effects of a minor’s intoxication, particularly when the minor is operating an automobile.
Id. at 715.
Further acknowledging the jurisprudential recognition that minors cannot safely handle alcohol, the Third Circuit in Kramer v. Continental Casualty Co., 92-1131 (La.App. 3 Cir. 6/22/94), 641 So.2d 557, unit denied, 94-2473 (La.12/19/94), 648 So.2d 402, held a motel liable for injuries caused by a large group |iaof minors who openly and apparently drank alcohol on the motel’s premises and parking lot prior to becoming involved in an automobile accident. The motel did not provide or sell alcohol to the minors. Nevertheless, the court held the motel liable in part because, with actual knowledge that minors possessed alcohol and consumed alcohol on its premises, they failed to “order that the young people cease the possession and consumption of alcoholic beverages.” Id. at 570.
The court stated,
[W]e cannot condone a motel proprietor who blatantly ignores the law and allows youths who are obviously under age and obviously drinking alcoholic beverages to use its premises for those very purposes. This conduct is reprehensible and challenges the law and the courts to check blameworthy conduct of responsible adults.
Kramer, supra at 570-71. The court further held that the motel “should have rea *769 sonably foreseen that injuries would be caused by an alcohol related accident by a minor, who was allowed to drink and become intoxicated on its premises with its knowledge” and who was forced to leave by the motel. Id.
At trial, both ATC Agent Ronald Kin-chen and Winn-Dixie representatives testified that the RVP had the force of law and required Winn-Dixie as a Class B licensee vendor of alcohol to prohibit and prevent the possession and consumption of alcohol on its premises, including its parking lot, by minors. Agent Kinchen explained that the RVP required licensees to comply with and enforce the same Title 14 statutes upheld in Manuel, supra, and that Winn-Dixie was indeed in violation of the RVP for permitting minors to congregate with alcohol on the morning of the tubing trip.
Considering the foregoing statutory and jurisprudential precedent, we reject Winn-Dixie’s contention that its legal duty to prevent minors from possessing and consuming alcohol on its premises as a Class B licensee does not contemplate or protect against drunk-driving related harm.
|14We also reject Winn-Dixie’s contention that, notwithstanding its breach of the legal duty to stop the minors’ possession and consumption of alcohol (failing to notify police on the morning of the tubing trip), it cannot be held liable because the harm sustained by plaintiffs was too far attenuated in time and place. Winn-Dixie asserts that it was unforeseeable, and liability cannot attach, where plaintiffs sustained injuries in a drunk-driving accident nine hours later, after a day of binge drinking on the Bogue Chitto River, 60 miles away.
This Court views the quantity of alcohol the minors possessed in Winn-Dixie’s parking lot as the key element in establishing foreseeability. Testimony at trial clearly established that Winn-Dixie had actual knowledge of the amount of alcohol, which was astonishing even considering the number of teenagers present. Approximately 40 teenagers with approximately 25 cases of beer were visible in the Winn-Dixie parking lot for approximately one hour. One teenager testified that he was blown away by the amount of alcohol in the lot and another testified that there was too much beer available for the number of people to consume on the trip.
A Winn-Dixie employee observed a large congregation of teenagers, possessing and/or consuming large quantities of pre-packaged alcohol, pooling it in ice chests, and loading their vehicles. It was apparent to any reasonable observer that the minors intended to take the alcohol off the premises by the amount of pre-pack-aged alcohol in their possession. It was further apparent that by placing the alcohol in ice chests, the teenagers intended to consume it readily. No reasonable person could believe that the quantity of alcohol possessed by the minors could have been consumed in a short period of time. Whether the teenagers drove 60 miles to the Bogue Chitto River for a day of tubing, or drove across the street, that amount of alcohol necessarily would take hours to consume.
11fiUnder the facts of this case, we find that it was reasonably foreseeable with that much readily available alcohol taken off the premises in vehicles that the minor plaintiffs may become involved in a drunk-driving incident even hours later. See Hopkins v. Sovereign Fire & Cas. Ins. Co., 626 So.2d 880, 885-86 (La.App. 3 Cir.1993), writ denied, 634 So.2d 390 (La.1994).
Moreover, the jury clearly took into consideration any attenuation in timing and location in apportioning only 10% fault to Winn-Dixie. The jury was properly in *770 structed that more than one cause can contribute to an injury. Accordingly, the jury found that Winn-Dixie’s negligence was a cause that caused or contributed to plaintiffs’ damages. It is well-settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Finding no manifest error in the jury’s factual findings, we find as a matter of law that Winn-Dixie’s negligence was a legal cause of plaintiffs’ injuries.
Accordingly, the jury’s finding of liability was not manifestly erroneous.

Meraux Liability

Meraux appeals the jury’s finding of liability for its negligent sale of alcohol to minors.
In Berg v. Zummo, supra, the Louisiana Supreme Court recognized tort liability for an alcohol vendor under La. R.S. 9:2800.1[8] for injuries caused by its ^negligent sale of alcohol to minors. The supreme court held, as previously recognized by every court of appeal, “when a [vendor] serves alcohol to a minor and that minor causes damage to another because of his intoxication, La. R.S. 9:2800.1 does not immunize it from liability, nor is it absolutely liable; instead, the court must determine whether the vendor violated general negligence principles, applying the traditional duty/risk analysis” on a case-by-case basis. Berg, supra at 715-18. “Under this analysis, the vendor has the duty to refrain from selling or serving alcohol to a minor, and if the other requirements of breach of duty, causation and damages are proven, the vendor will be liable for damages.” Berg, supra at 718.
In an action to recover damages for injuries allegedly caused by another’s neg *771 ligence, the plaintiff has the burden of proving negligence on the part of the defendant by a preponderance of the evidence. Hanks v. Entergy Corp., 06-477 (La.12/18/06), 944 So.2d 564, 578. Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, shows the fact sought to be proved is more probable than not. Id. Thus, the plaintiff in this type of action must produce evidence- from which the factfinder can reasonably conclude his injuries, more probably than not, were caused by the negligence of the particular defendant. Id.
|17Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id., supra at 580. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings, for only the factfin-der can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Id.
Applying a duty/risk analysis to the facts of this case and giving great deference to the jury’s factual findings, we find that plaintiffs met their burden, proving by a preponderance of the evidence, that Mer-aux breached its duty to refrain from selling or serving alcohol to minors; that alcohol sold by Meraux to minors was shared with and consumed by Brian Lafontaine; that Lafontaine’s impairment/negligence caused or contributed to the accident; and Meraux’s negligent and illegal sale of alcohol to minors was a substantial factor in causing the accident.
In so finding, we reject Meraux’s assertion that it did not owe or breach a duty of care to Brian Lafontaine because Meraux did not directly sell alcohol to Lafontaine, himself; or that plaintiffs failed to prove that Meraux’s negligence was a cause-in-fact of the accident.

Duty/Breach

Meraux argues that it did not owe or breach a duty of care to Brian Lafon-taine because Meraux did not sell alcohol directly to Lafontaine. Meraux contends that its duty not to sell alcohol to a minor does not encompass the circumstance where that minor shares the alcohol with another minor, who then becomes intoxicated and causes injury. Louisiana courts have expressly rejected this supposition.
|isln Hopkins, supra, a vendor sold alcohol to minors in contravention of state law. On summary judgment, the vendor claimed immunity due to the minor’s purchase and subsequent transfer of the alcohol to her minor friends. The Third Circuit held,
[W]e find no legal basis for issuing blanket immunity for acquitting the [vendor] of all liability for harm based solely upon [the minor’s] purchase and subsequent transfer of liquor. It would be difficult for the [vendor] to claim lack of knowledge in light of the volume and variety of alcoholic beverage she purchased cold and ready to drink in so short a period, some in the presence of other minors. ... The [vendor] admit[s] that they would be liable had they sold the liquor to [the minor] and she been injured because the dram shop immunity found in LSA-R.S. 9:2800 does not protect those providing alcohol to minors, but we interpret this axiom to additionally protect certain third party victims as well. A vendor of alcoholic beverages who sells alcoholic beverages to a minor cannot automatically escape liability for acts of the immediate purchaser of those items. Likewise, liability cannot be avoided where the quantity of items so purchased by a minor makes it clear that *772 those items are likely to be consumed by more than just the immediate purchaser.
Id. at 885-86.
The court reasonably found that a vendor’s duty not to sell alcohol to minors encompassed the clearly foreseeable risk that other minors might also drink the alcohol, become intoxicated, and cause injury. Louisiana courts have additionally rejected the notion that minors have a duty not to share alcohol with other minors. See our discussion of purchaser fault, infra; Guy, infra at 41; Hopkins, supra at 887; Gresham v. Davenport, 537 So.2d 1144, 1147 (La.1989).
The legislature imposes a duty upon vendors, in this case, Meraux, not to sell alcohol to minors. Prior to the tubing trip, Meraux minimally sold 4-9 cases of beer to James Perez, Ronald Lemoine, and Justin Hartman, all minors.[9] As in Hopkins, supra, Meraux cannot claim a lack of knowledge that the minors intended |19to share the alcohol in light of the quantity of alcohol sold to the three minors. Accordingly, we find that Meraux owed a duty to the immediate purchasers, Brian Lafontaine, and any other minor the alcohol was shared with, and further find that Meraux breached that duty.

Cause-in-Fact

Based upon the evidence, the jury concluded that the alcohol consumed on the tubing trip came from two sources: Meraux and Alex Chevron. Meraux argues on appeal that plaintiffs failed to prove that any alcohol purchased at Mer-aux was shared with or consumed by Brian Lafontaine, therefore, plaintiffs did not prove that Meraux’s negligence was a cause-in-fact of the accident.
Testimony revealed that Meraux sold alcohol to James Perez, Ronald Lemoine, and Justin Hartman on August 20 and 21, 2005. Further testimony revealed that the teenagers pooled all of the alcohol in common ice chests, at which time, it was no longer discernable which alcohol belonged to whom. More testimony was given that Brian Lafontaine did not possess his own ice chest and drank from whichever ice chest was closest to him on the river, and that he was seen drinking Bud Light. Conflicting testimony existed as to Lafon-taine’s beer of choice: Bud Light or Natural Light. Nevertheless, both Bud Light and Natural Light were purchased at Mer-aux and pooled together.
Again, where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Hanks, supra at 580. Giving great deference to the jury’s credibility determinations and factual findings, we find that the testimony and evidence submitted at trial proves by a preponderance of the evidence, more probably than not, Brian Lafontaine consumed alcohol sold by Meraux.
| aiMoreover, Meraux stipulated that Brian Lafontaine’s BAC was .08% or greater. And, the Louisiana State Police and an expert witness opined that the accident was caused by impairment and carelessness of the driver, with alcohol being a substantial contributing factor.
“Negligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm.” Berg, supra at 716. Here, it is undeniable that Meraux’s negligence in selling alcohol to the three minors was a substantial factor in contributing to Brian Lafontaine’s im *773 pairment, which led to his negligence in the accident. Therefore, we find that Mer-aux’s negligence was a cause-in-fact of plaintiffs’ damages.

Legal Cause

As discussed above, we find that Meraux’s duty not to sell alcohol to minors encompasses the foreseeable risk that other minors might also drink the alcohol, become intoxicated, and cause injury, especially in light of the amount of alcohol sold. Accordingly, we find that Meraux’s negligence was a legal cause of the accident. Finally, actual damages were proven.
Thus, we find that the jury’s finding of liability for Meraux’s negligence in selling alcohol to minors, who then shared the alcohol with Brian Lafontaine, was not manifestly erroneous.

Jury Interrogatories

Winn-Dixie and Meraux raise assignments of error relating to the interrogatories submitted to the jury by the trial court.
Under the guidelines of Louisiana Code of Civil Procedure article 1812, the trial court is given wide discretion in determining and framing questions to be posed as special jury interrogatories, and absent some abuse of that discretion, this court will not set aside those determinations. Martin v. A-l Home Appliance Center, Inc., 12-784 (La.App. 5 Cir. 5/30/13), 117 So.3d 281, 283; Tramontin v. Glass, 95-744 (La.App. 5 Cir. 1/30/96), 668 So.2d 1252, 1258; Courtney v. Winn-Dixie Louisiana, Inc., 447 So.2d 504, 509 (La. App. 5th Cir.1984).
Article 1812(A) provides, in relevant part:
[T]he court may submit to the jury written questions susceptible of categorical or other brief answer, or may submit written forms of the several special findings which might properly be made under the pleadings and evidence, or may use any other appropriate method of submitting the issues and requiring the written findings thereon. The court shall give to the jury such explanation and instruction concerning the matter submitted as may be necessary to enable the jury to make its findings upon each issue....
It is well-settled that misleading or confusing interrogatories may constitute reversible error. Schramm v. Chaisson, 03-2307 (La.App. 1 Cir. 9/17/04), 888 So.2d 247, 251. However, the manifest error standard of appellate review may not be ignored unless the proposed jury interrogatories are so inadequate or incorrect as to preclude the jury from reaching a verdict based on the law and the facts. James v. Autozone, Inc., 03-1255 (La.App. 1 Cir. 4/2/04), 879 So.2d 162, 165; Doyle v. Picadilly Cafeterias, 576 So.2d 1143, 1153 (La. App. 3rd Cir.1991).

A. Legal Cause

First, Winn-Dixie and Meraux argue that the trial court erroneously declined to include a special jury interrogatory on the issue of “legal cause” as set forth by La. C.C.P. art. 1812(C)(1). This claim, however, is not preserved on appeal by Winn-Dixie. Winn-Dixie specifically requested that the trial court not use the term “legal cause” in the interrogatory as the legal jargon would confuse the jury. Therefore, we address this claim as to Meraux only.
La. C.C.P. art. 1812(C) states, in pertinent part:
C. In cases to recover damages for injury, death, or loss, the court at the request of any party shall submit to the jury special written questions inquiring as to:
*774 I ?.¾(1) Whether a party from whom damages are claimed, or the person for whom such party is legally responsible, was at fault, and, if so:
(a) Whether such fault was a legal cause of the damages, and, if so:
(b) The degree of such fault, expressed in percentage.

(Emphasis added.)

The jury interrogatories submitted to the jury included the following on causation:
1. Did you find that Brian Lafontaine was negligent in the operation of his vehicle? YES
2. Did the negligence of Brian Lafon-taine cause or contribute to the damages to the accident of August 21, 2005 and to any damages sustained by the plaintiffs? YES
3. Do you find that Winn-Dixie or its employees sold or negligently provided alcoholic beverages to a minor or minors on August 20 or 21, 2005? NO
4. Do you find that Brian Lafontaine consumed alcoholic beverages that were sold or negligently provided to minors by Winn-Dixie or its employees? NO
5. Do you find that Winn-Dixie or its employees negligently permitted minors to possess and/or consume alcohol on its premises? YES
6. If so, do you find that Winn-Dixie’s or its employees’ negligence in permitting minors to possess and/or consume alcohol on its premises caused or contributed to any damages sustained by the plaintiffs? YES
7. Do you find that Meraux Food Store or its employees sold or negligently provided alcoholic beverages to a minor or minors on August 20 or 21, 2005? YES
8.Do you find that Brian Lafontaine consumed alcoholic beverages that were sold or negligently provided to a minor(s) by Meraux Food Store or its employees? YES
Moreover, the trial judge instructed as to negligence:
Negligence is the failure of a party to use due care and diligence under circumstances in which the party owes a duty of care.
The trial judge instructed as follows as to the plaintiffs burden of proof:
18SHe/she must prove first, that he has been injured; second, that the defendants) were negligent or at fault; and third, that the plaintiffs injury was the result of the said negligence or fault of the defendant. Thus, the plaintiff must prove, (1) the injuries, (2) the defendants’ negligence and (3) that the defendants’ negligence proximately caused the injury.
The trial court thereafter instructed as to proximate cause:
The plaintiff must show that it is more likely true than not true that the negligence or fault of the defendant, if proven, was the proximate cause of the injury — that it played a substantial part in bringing about or actually causing the injury claimed by the plaintiff. The proximate cause of the injury is a primary or moving act, or acts, which produces the injury complained of by the plaintiff. Unless the negligence can be shown to be a proximate cause of plaintiffs injury, it cannot be the basis for an award of damages.
This does not mean that the law recognizes only one proximate cause of an injury or damage consisting of only one factor, or the conduct of only one per *775 son. On the contrary, many factors or things, or the conduct of two or more persons may operate at the same time, either independently or together, to cause injury or damage.
The trial court further instructed as to La. R.S. 14:93.11:
La. R.S. 14:93.11 provides that unlawful sales to persons under 21 is the selling or otherwise delivering for value of any alcoholic beverage to any person under 21, unless such person is the lawful owner or lawful employee of an establishment to which the sale is being made and is accepting such delivery pursuant to such ownership or employment. Lack of knowledge of the person’s age shall not be a defense.
Taken together, the interrogatories and instructions are in compliance with La. C.C.P. art. 1812. Although not specifically worded in terms of legal cause, the trial court instructed the jury as to La. R.S. 14:93.11, negligence, and proximate cause. Necessarily considering the interrogatories together, the jury explicably found that Meraux illegally sold alcohol to minors, Brian Lafontaine drank the alcohol sold by Meraux, and Lafontaine’s impairment/negligence caused the accident. As such, the jury necessarily found that Mer-aux’s negligence was a legal cause of the accident.
| ¡^Therefore, even if the trial court erred in failing to issue a specific interrogatory regarding legal cause as mandated by La. C.C.P. art. 1812(C), the error is harmless. See also Denton v. Vidrine, 06-141 (La. App. 1 Cir. 12/28/06), 951 So.2d 274, 286; State Farm Fire & Cas. Co. v. Valley Elec. Membership Corp., 558 So.2d 731, 739 (La. App. 3 Cir.1990) (where Louisiana courts did not find an abuse of discretion where the trial court declined to give a special jury interrogatory regarding “legal cause” and there was substantial compliance with La. C.C.P. art. 1812(C)).

B. Purchaser Fault

Next, Winn-Dixie and Meraux assert that Justin Hartman should have been included on the jury interrogatory and allocated fault by the jury for purchasing and providing Brian Lafontaine, a minor, with beer.[10]
Defendants cite to La. R.S. 14:93.13 in support of their claim; however, their reliance is misplaced. La. R.S. 14:93.13 makes “it unlawful for any person, other than a parent, spouse, or legal guardian, as specified in R.S. 14:93.10(2)(a)(ii), to purchase on behalf of a person under 21 years of age any alcoholic beverage.” Defendants argue that “any person” includes minors. This contention has been expressly rejected by Louisiana courts.
Louisiana imposes no duty on minors to refrain from sharing alcohol with other minors. See Guy v. State Farm, et al, 98-713 (La.App. 3 Cir. 12/9/98), 725 So.2d 39; Hopkins, supra; Gresham, supra. The Third Circuit in Guy, supra, specifically found that nothing in La. R.S. 14:93.10-14:93.14 imposes upon minors a duty not to share alcohol with friends. “A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty.” Lemann v. Essen Lane Daiquiris, Inc., 05-1095 (La.3/10/06), 923 So.2d 627, 633. Whether a duty is | showed is a question of law. Id. The absence of a duty in these circumstances necessarily precludes an apportionment of fault to any other *776 minors who purchased alcohol from Mer-aux.
Accordingly, the trial judge properly refused to allow the jury to apportion fault to Justin Hartman or any other minor who provided alcohol to Lafontaine.

C. Passenger Fault

Last, Winn-Dixie and Meraux assert that Ryan Wiltz, Rachel Gabb, and Charie and Chrissie Billiot should have been included on the jury interrogatory form and allocated fault by the jury as guest passengers in Brian Lafontaine’s vehicle. Defendants assert that the passengers knew or should have known that La-fontaine was too impaired to drive and did nothing to prevent him from driving.
The law is well-settled that a guest passenger riding with a driver who has been drinking excessively assumes the risk of injuries received in an accident caused in whole or in part by the driver’s negligence, if the alcohol-induced impairment of the driver’s ability is a substantial contributory cause of the driver’s negligence, and if the guest passenger knows or should have known of the driver’s condition and nevertheless voluntarily rides with him. Prestenbach v. Sentry Ins. Co., 340 So.2d 1331, 1335 (La.1977), citing Marcotte v. Travelers Inc. Co., 258 La. 989, 249 So.2d 105 (1971); Jones v. Continental Casualty Co., 246 La. 921, 169 So.2d 50 (1964). An allegation of fault by a passenger for riding with an impaired driver is an affirmative defense that must be proven by the party asserting the defense by a preponderance of the evidence. Prestenbach, supra at 1335.
In Prestenbach, supra, the supreme court rejected the defense of passenger fault where the defendant failed to introduce evidence that the passenger knew or should have known that the defendant driver was impaired. See also Molbert v. Toepfer, 550 So.2d 183, 187 (La.1989) (no passenger fault where evidence of the passenger’s knowledge of impairment was inconclusive).
At trial, Chrissie Billiot testified that she and Rachel Gabb finished tubing 30 minutes to an hour ahead of Lafontaine and went to the car to rest while waiting for the rest of the group to finish. Ryan Wiltz and Charie Billiot came to the car together next to wait for Lafontaine to leave.
Testimony was consistent that Lafon-taine was too intoxicated to drive home, and that Chris Acosta tried to prevent him from driving. Lafontaine nevertheless kept his keys and took off quickly. Chris-sie testified that she, Rachel, and Charie did not have their driver’s licenses and that at that age, she did not have good judgment of how intoxicated Lafontaine was.
Further, defendants failed to introduce any evidence that Ryan Wiltz knew or should have known of Lafontaine’s condition and inability to drive. Ryan was not friends with Lafontaine, was with Charie, not Lafontaine, on the river and finished the trip before Lafontaine.
The law is clear that a trial court is bound to instruct the jury only on the law which pertains to the evidence adduced in that particular case. Giarratano v. Krewe of Argus, Inc., 449 So.2d 530, 533 (La.App. 5th Cir.1984). Where the evidence will not support a finding of comparative fault, the trial judge does not err in refusing to instruct the jury or submit a jury interrogatory on that issue. Further, this Court held that it is reversible error for a trial judge to include a party on the jury interrogatory form where the record does not contain evidence of that party’s legal fault. See Willis v. Noble Drilling, Inc., 11-598 (La.App. 5 Cir. 11/13/12), 105 So.3d 828, 842.
*777 Accordingly, the record reflects that defendants failed to carry their burden of proving that Lafontaine’s passengers knew or should have known- thatJ^Lafontaine was too impaired to drive or that they had the ability to act accordingly. Therefore, the trial court properly excluded the passengers from the interrogatory form as the evidence presented at trial did not support the defense of passenger fault.

Jury Instructions

Winn-Dixie and Meraux further contend that the trial court erroneously instructed the jury on several principles of law.
Louisiana Code of Civil Procedure article 1792(B) requires the trial court to “instruct the jurors on the law applicable to the cause submitted to them.” The trial court is responsible for reducing the possibility of confusing the jury and may exercise the right to decide what law is applicable and what law the trial court deems inappropriate. Adams v. Rhodia, Inc., 07-2110 (La.5/21/08), 983 So.2d 798, 804-05; Baxter v. Sonat Offshore Drilling Inc., 98-1054 (La.App. 1 Cir. 5/14/99), 734 So.2d 901, 906.
Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. Jones v. Liberty Mut. Ins. Co., 568 So.2d 1091, 1094 (La.App. 5th Cir.1990). The trial judge is under no obligation to give any specific jury instructions that may be submitted by either party; the judge must, however, correctly charge the jury. Adams, swpra at 804-05. If the trial court omits an applicable, essential legal principle, its instruction does not adequately set forth the issues to be decided by the jury and may constitute reversible error. Id.; Doyle, supra at 1152.
Louisiana jurisprudence is well-established that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. Adams, supra at 804-05. Trial courts are given broad discretion in | ^formulating jury instructions and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law. Id.
HoWever, when a jury is erroneously instructed and the error probably contributed to the verdict, an appellate court must set aside the verdict. In the assessment of an alleged erroneous jury instruction, it is the duty of the reviewing court to assess such impropriety in light of the entire jury charge to determine if the charges adequately provide the correct principles of law as applied to the issues framed in the pleadings and the evidence and whether the charges adequately guided the jury in its deliberation. Id. Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice. Id.; Nicholas v. Allstate Insurance Company, 99-2522 (La.8/31/00), 765 So.2d 1017, 1023.
Determining whether an erroneous jury instruction has been given requires a comparison of the degree of error with the jury instructions as a whole and the circumstances of the case. See Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d 466 (La.App. 1 Cir.1994), writ denied, 638 So.2d 1094 (La.1994). Because the adequacy of a jury instruction must be determined in the light of jury instructions as a whole, when small portions of the instructions are isolated from the context and are erroneous, error is not necessarily prejudicial. Adams, supra at 804-05. Furthermore, the manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts. Jones, 568 So.2d at 1094. Thus, on *778 appellate review of a jury trial the mere discovery of an error in the judge’s instructions does not of itself justify the appellate court conducting the equivalent of a trial de novo, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case. | Adams, supra at 804-05; Brown v. White, 405 So.2d 555, 560 (La.App. 4th Cir.1981), rev’d on other grounds on reh’g, 430 So.2d 16 (La.1983).

A. DWI, Reckless Operation, Speeding Instructions

Winn-Dixie asserts that the trial court failed to instruct the jury on the criminal offenses of driving while intoxicated, reckless operation of a vehicle, and speeding. The trial court denied the proposed instructions, ruling that they were not relevant to the civil matter before the jury. Mr. Ryan, counsel for Winn-Dixie, acquiesced in the trial court’s ruling and did not object to the failed inclusion of these charges. Accordingly, this claim is not preserved on appeal. See La. C.C.P. art. 1793(C).
Even should this Court review the claim, the trial court’s ruling is not manifestly erroneous. The issue before the jury was whether Winn-Dixie and Meraux were negligent, not whether Brian Lafon-taine was guilty of any criminal offense. Lafontaine was listed on the jury interrogatory and the jury found him to be 30% at fault in the accident. Therefore, the jury clearly considered and assessed Lafon-taine’s negligence.

B. Impeachment Evidence

Next, Winn-Dixie asserts that the trial court failed to give a limiting instruction to the jury that impeachment evidence has no substantive value. The trial court denied the limiting instruction as impossible to delineate between the evidence (substantive versus secondary) and instruct accordingly. The court further found that the proposed instruction would confuse the jury.
Again, the trial judge is under no obligation to give any specific jury instructions that may be submitted by either party. Further, the trial court is responsible for reducing the possibility of confusing the jury and may exercise the right to decide what law is applicable and what law the trial court deems | sninappropriate. Adams, supra at 804-05. Here, we do not find that the trial court abused its broad discretion in denying the specific instruction proposed. Moreover, the jury rejected plaintiffs’ theory that any minor purchased alcohol at Winn-Dixie. Therefore, any erroneous inclusion or failed inclusion of an instruction regarding the impeachment evidence referenced by Winn-Dixie, i.e., Jared Heninger’s statement that he purchased alcohol at Winn-Dixie (see, infra) and two personal checks written by Chris Acosta to Winn-Dixie for keg beer subsequent to the tubing trip, was harmless.

C.Minors Held to Lower Standard of Care

Further, Meraux argues that the trial court improperly instructed the jury that minors are held to a lesser standard of care rather than a reasonable person standard.
The trial court charged the jury as follows:
While a minor under the age of 18 is capable of comparative or contributory fault, he is not held to the adult standards of comprehension of danger and the duty of selfcare.
As stated above, La. C.C.P. art. 1792(B) requires that a trial court instruct jurors *779 on the law applicable to the cause submitted to them. Louisiana courts have consistently placed minors in a separate category from majors, both criminally and civilly, and have consistently held minors to a lesser standard of care. This Court held, “[wjhile a child may be capable of comparative fault, he is not held to the adult standards of the comprehension of danger and the duty of self care.” Ziegel v. South Cent. Bell, 635 So.2d 314, 318 (La.App. 5th Cir.1994). In Crowe v. State Farm Mutual Auto. Ins. Co., 416 So.2d 1376, 1382 (La.App. 3rd Cir.1982), the Third Circuit held, “[i]n evaluating whether the child’s conduct constitutes contributory negligence, the child is required to exercise only the care expected of his age, intelligence, and experience under the particular circumstances presented |aito him; in this respect, the obviousness or not of the danger to one of the child’s years, experience, and intelligence is taken into consideration.” Further, in Jolivette v. Iberia Parish School Board, 601 So.2d 812, 815 (La. App. 3rd Cir.1992), the court held “[a child’s] negligence is not measured by the standard of self-care expected of an adult but rather only by the self-care expected of a child of her age, intelligence and experience under the circumstances presented.” Id., citing Howard v. Allstate Insurance Co., 520 So.2d 715 (La.1988).
Adequate jury instructions are those which fairly and reasonably point up the issues and which provide correct principles of law for the jury to apply to those issues. Jones, supra at 1094. The adequacy of jury instructions must be determined in light of the instructions as a whole and the manifest error standard of review may not be ignored unless the instructions were so incorrect or inadequate as to preclude the jury from reaching a verdict based on the law and the facts.. Id.
We do not find the trial court’s instruction to be an incorrect statement of the law based upon the above-cited jurisprudence, nor do we find that the instruction precluded the jury from reaching a verdict based on the law and facts. Indeed, the jury apportioned 30% fault to Lafontaine, a minor. Accordingly, the trial court was not manifestly erroneous in instructing the jury as it did regarding the standard of care of minors.

D. Consumption of Alcohol is Proximate Cause of Injury Instruction

Finally, Meraux argues that the trial court erroneously failed to instruct the jury of the legal presumption that “the consumption . of intoxicating beverages, rather than the sale or serving or furnishing of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person” as declared by the legislature in La. R.S. 9:2800.1, supra.
|32A trial judge is required only to give instructions which properly reflect the law applicable to the facts of a particular case. La. C.C.P. art. 1792; Adams, supra at 804-05; Jones, supra at 1094. The instruction Meraux proposed did not reflect a correct principle of law applicable to the facts of this particular case. The provisions of La. R.S. 9:2800.1 do not apply in the sale, serving, or furnishing of alcohol to minors as it is illegal to sell, serve, or furnish minors with alcohol pursuant to La. R.S. 14:93.10, et seq. See also Berg, supra. Accordingly, the trial court was not manifestly erroneous in denying said instruction.

Jared Heninger’s Prior Inconsistent Statement

Winn-Dixie contends that Jared Heninger’s prior inconsistent statement that he purchased alcohol from Winn-Dix- *780 ie was erroneously admitted into evidence, where the trial court prohibited Winn-Dixie from cross-examining Jared regarding his subsequent statement that he purchased alcohol from Brothers.
Jared Heninger initially gave a statement to the ATC that he purchased alcohol from Winn-Dixie on the morning of the tubing trip. Through the course of the ATC’s investigation, the ATC discovered that Jared and Daniel Weir devised a scheme to lie about purchasing alcohol from Winn-Dixie so that the Wiltz family could recover more damages. Both boys later admitted that they lied and Jared Heninger disclosed that he actually purchased alcohol from Brothers Petroleum.
Brothers, however, was dismissed from the suit on summary judgment and the trial court granted plaintiffs’ motion in limine to prohibit any testimony that alcohol was purchased from Brothers. Winn-Dixie filed a supervisory writ in this Court seeking review of the trial court’s ruling on the motion in limine. This Court ruled that there was no error in the trial court’s ruling since Brothers was already found to be not at fault and dismissed from the suit. See Gina Wiltz, et al. v. Brothers Petroleum, LLC, et al., 09-1077 (La.App. 5 Cir. 1/21/10) (unpublished writ disposition).
The trial court is given vast discretion in its evidentiary rulings, and its decision to admit or exclude evidence will not be reversed on appeal in the absence of an abuse of discretion. Finch v. ATC/Vancom Mgmt. Servs. Ltd. P’ship, 09-483 (La. App. 5 Cir. 1/26/10), 33 So.3d 215, 218. Moreover, “[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.” La. C.E. art. 103. At trial, Jared Heninger and Daniel Weir’s scheme was revealed and the jury learned that Jared lied about purchasing alcohol from Winn-Dixie. Therefore, the admission of Jared Heninger’s prior inconsistent statement had little, if any, effect on defendants’ substantial rights. Accordingly, we find no error in the trial court’s admission of Jared Heninger’s prior statement that he purchased alcohol at Winn-Dixie.
Moreover, even should this Court find that the statement was erroneously admitted, the erroneous introduction of evidence is subject to a harmless error analysis. See Willis v. Meilleur, 11-705 (La.App. 5 Cir. 5/31/12), 96 So.3d 1259, 1269. Here, the jury rejected plaintiffs’ theory that Winn-Dixie sold alcohol to any minors, therefore the admission of Jared’s prior statement that he purchased alcohol from Winn-Dixie would be harmless.

Chrissie Billiot’s Statement to Police

Winn-Dixie further maintains that the trial judge improperly allowed into evidence Chrissie Billiot’s statement that Jared Heninger purchased alcohol at Winn-Dixie.
Chrissie is the sole survivor of the accident without permanent injury, and the only victim to testify at trial. Shortly after the accident, Chrissie was questioned by Trooper Galmiche at the hospital and indicated that Jared Heninger | .^purchased alcohol at Winn-Dixie. Although Chrissie retained memory of the events prior to leaving the parking lot of the Bogue Chit-to, she did not retain memory of the events after that point; therefore, she did not recall her statement to Trooper Galmiche. Although shown the report at trial, the report did not refresh her recollection. She further indicated that she did not recall any firsthand knowledge of where Jared Heninger purchased alcohol.
In an effort to prove their theory that alcohol was purchased at Winn-Dixie prior to the tubing trip, plaintiffs sought the introduction of Chrissie’s statement to Trooper Galmiche as a recorded recollec *781 tion under La. C.E. art. 803. Chrissie’s statement was introduced into evidence over Winn-Dixie’s objections.
La. C.E. art. 803 — Hearsay Exceptions, states in part:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence and received as an exhibit but may not itself be taken into the jury room. This exception is subject to the provisions of Article 612.
In State v. Lanieu, 98-1260 (La.App. 1 Cir. 4/1/99), 734 So.2d 89, 91, the First Circuit upheld the introduction of a statement as a recorded recollection where a witness claimed she was drunk when the statement was made and denied making it, and where the investigating officer testified that the witness did make the statement and the officer was available for cross-examination.
Similarly, it was adequately established by Trooper Galmiche at trial that Chrissie Billiot indeed gave a statement to him at the hospital despite her inability to recall giving it. He testified that she was alert, responsive, and understood his questions. Trooper Galmiche wrote out his questions and her answers on the | or,statement form as she stated them, and showed her the statement at its conclusion. Chrissie’s statement was made only hours after the accident, when the events were fresh in her memory, and Trooper Gal-miche was available for meaningful cross-examination. Accordingly, the trial judge did not abuse his discretion in admitting the statement under La. C.E. art. 803(5).
Moreover, the trial court’s alleged error as to the admission of the statement is subject to a harmless error analysis. Willis, supra at 1269. Again, the jury rejected plaintiffs’ theory that minors purchased alcohol at Winn-Dixie. Therefore, even if the introduction of Chrissie Billiot’s statement was error, it would have been harmless under the circumstances.

Allocation of Fault

Winn-Dixie and Meraux assert that the jury’s allocation of fault is clearly wrong and should be reallocated by this Court. Specifically, Winn-Dixie asserts that Brian Lafontaine is 100% culpable, while Meraux asserts that Lafontaine, Bogue Chitto, and Alex Chevron’s fault should be increased and Meraux’s fault should be decreased.
Comparative negligence is determined by the reasonableness of the party’s behavior under the circumstances. Smith v. Jack Dyer & Associates, Inc., 633 So.2d 694, 699 (La.App. 1st Cir.1993). The factfinder’s allocation of comparative negligence is a factual matter which will not be disturbed on appeal unless it is clearly wrong or manifestly erroneous. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 972 (La.1985). The allocation of fault is not an exact science, or the search for one precise ratio, but rather an acceptable range, and that any allocation by the factfinder within that range cannot be clearly wrong. Foley v. Entergy La., Inc., 06-0983 (La.11/29/06), 946 So.2d 144, 166. Only after making a determination that the trier of fact’s apportionment of fault is clearly wrong cancan appellate court disturb the award. Clement v. Frey, 95-1119, 95-1163 (La.1/16/96), 666 So.2d 607, 610.
*782 In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties. Watson, supra at 974.
Applying the Watson factors set forth above, we find that the jury’s allocation of fault was within an acceptable range and was not manifestly erroneous. Its allocation of fault was reasonable and rational, placing the negligent actors in three tiers based upon descending degrees of culpability. The jury allocated the highest degree of fault, 30%, to the intoxicated driver, Brian Lafontaine, finding him to be the most negligent. The jury then cast Meraux and Alex Chevron in the second, intermediate tier of fault, assigning both 22.5% fault for the sale of alcohol to minors that made the accident possible, but not as negligent as Lafontaine. Finally, the jury allocated the lowest degree of fault, 15% and 10%, to Bogue Chitto and Winn-Dixie, respectively. This lowered allocation of fault shows that the jury recognized that although neither business was found to have sold alcohol to the minors, both had the obligation to stop the illegal | ^consumption and possession by the minors prior to the accident. The fault allocation between Bogue Chitto and Winn-Dixie further reflects the jury’s weighing of their respective responsibilities, placing more fault on Bogue Chitto, which had the last opportunity to prevent the accident and engaged in the consumption of alcohol with the minors, while also finding that these two businesses were not as culpable as the businesses who sold the alcohol.
Finding no error in the jury’s finding of liability as to either defendant, we find no manifest or clear error in the jury’s assessment of fault.

Applicability of La. R.S. 9:2798.4

Winn-Dixie and Meraux assert that the trial court erroneously found La. R.S. 9:2798.4[11] inapplicable as to preclude Tina *783 Tommaseo from recovering wrongful death damages for her loss of love and affection of her son, Brian Lafontaine. La. R.S. 9:2798.4 gives immunity from liability to any person under La. C.C. arts. 2315.1 or 2315.2 for damages for injury, death, or loss of an operator of a motor vehicle whose blood alcohol concentration is .08% or more, when the operator is found to be over 25% negligent as a result of a blood alcohol concentration in excess of the legal limits, and the negligence is a contributing factor causing the |ssdamage. Damages include all general damages, including those otherwise recoverable in a survival or wrongful death action.
At trial, counsel for defendants and Tina Tommaseo stipulated that Brian Lafon-taine’s blood alcohol content was 0.08% or greater. Testimony revealed that his actual BAC was 0.09%, and the Louisiana State Police and an expert witness testified that the crash was due to impairment and carelessness of the driver, and that alcohol was a significant contributing factor to the accident. The jury found Lafontaine to be 30% at fault in the accident.
On appeal, defendants argue that La. R.S. 9:2798.4 is clear and unambiguous, and should be applied to give immunity to Winn-Dixie and Meraux. Defendants argue under the facts of this case, the statute precludes recovery of wrongful death damages for Lafontaine from “any person.”
In Stead v. Swanner, 10-371 (La.App. 5 Cir. 12/28/10), 52 So.3d 1149, plaintiffs brought an action against a homeowner for the wrongful death of their minor son, alleging that the minor became legally intoxicated at a party held at the homeowner’s residence and that, as a result, upon leaving the party, the minor lost control of his vehicle and suffered a fatal accident. The trial court granted summary judgment finding La. R.S. 9:2798.4 operated to grant immunity to the homeowner and the parents appealed. On appeal, this Court reversed and held that La. R.S. 9:2798.4 does not serve to grant immunity to vendors and social hosts in the face of La. R.S. 9:2800.1. Rather, jurisprudence holds that a vendor or social host is neither absolutely immune nor absolutely liable when that vendor or social host sells or serves alcohol to a minor. This Court concluded, in Stead, supra, that a duty/risk analysis was required to determine whether the homeowner was immune from liability. See Berg v. Zummo, supra.
| o;)As stated, because a vendor is neither absolutely immune nor absolutely liable when that vendor sells or serves alcohol to a minor, the court must undertake a duty/risk analysis to determine Meraux’s liability under Berg, supra. Based upon the duty/risk analysis performed supra, we find that Meraux is 22.5% at fault, as the jury found, and no immunity applies.
The jury, however, did not find that Winn-Dixie sold alcohol to any minor on the morning of the tubing trip. Therefore, under the facts of this case, Winn-Dixie is not a vendor of alcohol. Accordingly, we must now determine whether La. R.S. 9:2798.4 serves to grant immunity to Winn-Dixie.
In Stead, supra, this Court, finding La. R.S. 9:2798.4 inapplicable to the facts of the case, declined to interpret the legisla *784 ture’s intent in enacting the statute. “The paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law.” State v. Johnson, 03-2993 (La.10/19/04), 884 So.2d 568, 575, citing Theriot v. Midland Risk Insurance Co., 95-2895 (La.5/20/97), 694 So.2d 184, 186. “What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will.” Johnson, supra at 575, citing State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, 800.
Looking to the text of the statute, we believe that La. R.S. 9:2798.4 was enacted with the intent to further the legislature’s strong and long-standing interest in protecting its citizens against drunk-driving related harm. By precluding recovery of damages for those persons who choose to operate a vehicle while under the influence of alcohol or drugs, the legislature has placed yet another consequence on driving under the influence. While drafting the statute broadly to provide immunity to “any person” for damages of an operator who drives under the influence, the Legislature curtailed its application to only operators who are found |4l1to be in excess of 25% negligent as a result of a blood alcohol concentration in excess of the limits provided in R.S. 14:98(A)(l)(b), or as a result of being under the influence of a controlled dangerous substance described in R.S. 14:98(A)(l)(c); and the negligence is a contributing factor causing the damage. In doing so, the legislature contemplated the instance in which a person, although negligently driving under the influence, may not be the cause of the damage sustained. In so contemplating, the legislature limited immunity to persons in only instances where the negligence of the operator exceeds 25%, and where the said negligence was a contributing cause of the damage.
Laws that are clear and unambiguous are to be applied as written provided that their application does not lead to absurd consequences. La. C.C. art. 9. We do not find that either the intent of the legislature or the application of La. R.S. 9:2798.4 as written leads to absurd consequences.[12]
Applying La. R.S. 9:2798.4 to the facts of this case, we find Winn-Dixie is immune from liability to Tina Tommaseo for her loss of love and affection of Brian Lafon-taine.
Accordingly, we find that the trial court properly determined that La. R.S. 9:2798.4 did not apply to preclude Tina Tommaseo’s recovery of wrongful death damages for her son from Meraux, which the jury found did sell alcohol to some of the minors. Conversely, the trial court erred in finding that La. R.S. 9:2798.4 did not apply as to Winn-Dixie, which the jury found did not sell alcohol to any minors. Therefore, we find Winn-Dixie is immune from liability under La. R.S. 9:2798.4 to Tina Tomma-seo for wrongful death damages for loss of love and affection of Brian Lafontaine.

_|^jLegal Interest

The trial court awarded Ryan Wiltz $15,000,000.00 in future medical expenses and $1,380,000.00 for loss of earning capacity with interest from the date of judicial demand. Meraux asserts that the trial court erred in awarding legal interest from the date of judicial demand and contends, rather, that the interest should run only from the date of judgment.
Louisiana Revised Statute 13:4203 governs interest on judgments in ex delicto cases, and § 4203 specifically states that *785 “legal interest shall attach from date of judicial demand, on all judgments, sounding in damages,’ ex delicto,’ which may be rendered by any of the courts.” (Emphasis added.) Further, in Edwards v. Daugherty, 03-2103 (La.10/01/04), 883 So.2d 932, the Louisiana Supreme Court emphatically interpreted § 4203, holding that prejudgment interest is recoverable on awards for future damages. Specifically, the Court stated:
The language of LSA-R.S. 13:4203 is clear and unambiguous: no distinction is made between judgments sounding in “past damages” and those sounding in “future damages.” The plain language of the statute makes it evident that it applies to “all judgments, sounding in damages....” No exception is made for future damages. Thus, without action from the legislature, we decline to distinguish between past and future damages in the award of legal interest.
Edwards, at 955. See also Tastet v. Joyce, 531 So.2d 520 (La.App. 5th Cir.1988).
We find that the trial court properly awarded legal interest from the date of judicial demand on the entire amount of the judgment.

Costs

As we do not find that the jury was manifestly erroneous in finding defendants liable, costs properly remain assessed against Winn-Dixie and Meraux.

Cross-Appeal

The Wiltzes, on behalf of their minor son, Ryan Wiltz, appeal the trial court’s judgment awarding Ryan $600,000.00 in general damages as wholly | ^inadequate, and contend that the trial judge erroneously denied their motion for judgment notwithstanding the verdict.

Ryan Wiltz’s Award

After a two-week trial, the jury found in favor of the Wiltzes, holding both Winn-Dixie and Meraux liable for Ryan’s injuries. Prior to trial, the parties stipulated to Ryan’s past medical expenses in the amount of $1,551,855.17. In addition to the stipulated medical expenses, the jury awarded Ryan $15,000,000.00 for future medical expenses; $1,380,000.00 for loss of earning capacity; $125,000.00 for past and future pain and suffering; $125,000.00 for past and future mental anguish; $100,000.00 for loss of enjoyment of life; and $250,000.00 for past and future disfigurement and disability. The total award for Ryan Wiltz was $18,531,855.17. The jury also awarded damages to Gina and Tim Wiltz for their loss of consortium in the amounts of $750,000.00 and $500,000.00, respectively.
On appeal, the Wiltzes argue that Ryan’s award of only $600,000.00 in general damages is woefully at odds with his permanent, catastrophic physical injuries and brain damage, and constitutes an abuse of discretion. The Wiltzes pray that this Court amend the judgment to increase Ryan’s general damages from $600,000.00 to $4,000,000.00.

Standard of Review

General damages are those which may not be fixed with pecuniary exactitude; instead, they “involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.” Buckheister v. U.S. Environmental Services, LLC, 11-1148 (La.App. 5 Cir. 5/31/12), 97 So.3d 414, 422; Duncan v. Kansas City S. Ry. Co., 00-66 (La.10/30/00), 773 So.2d 670; Keeth v. Dept. of Pub. Safety & Transp., 618 So.2d |4S1154, 1160 (La.App. 2nd Cir. 1993). Vast discretion is accorded the trier of fact in fixing general damage awards. La. C.C. art. 2324.1; Hollenbeck v. Oceaneering Int, Inc., 96-0377 (La.App. 1 Cir. *786 11/8/96); 685 So.2d 163, 172. This vast discretion is such that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Buckheister, supra at 422, citing Youn, supra at 1260. It is only when the award is, in either direction, beyond that, which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances, that the appellate court should increase or reduce the award. Youn, supra at 1261.
Therefore, the initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. Cone v. National Emergency Serv. Inc., 99-0934 (La.10/29/99), 747 So.2d 1085, 1089; Reck v. Stevens, 373 So.2d 498 (La.1979). Only after a determination that the trier of fact has abused its “much discretion” is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d 429 (La.1991); Scott v. Hospital Service District No. 1 of the Parish of St. Charles, 496 So.2d 270 (La.1986); Carollo v. Wilson, 353 So.2d 249 (La.1977); Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976).
1 uRyan Wiltz’s Injuries
Ryan Wiltz was transported from the accident scene to Charity Hospital in New Orleans, Louisiana. He suffered severe facial and comminuted zygomatic fractures in the middle part of his face and required internal fixation surgery, where metal plates were screwed into his face to hold the bones in place while they healed. He remained in a coma on life support. When Hurricane Katrina struck the Gulf Coast, Ryan could not immediately be transported due to his critical condition. When Charity lost electricity, he was kept alive manually, and was wrapped in damp sheets to counteract the heat. Ryan then was evacuated via a fire department boat to the Superdome. From the Superdome, he was helicoptered to Herman Memorial Hospital in Houston, Texas. His mother did not know his whereabouts until two days later. After three weeks in the Neu-ro Intensive Care Unit, Ryan was transported a second time to Kindred Hospital in Houston for approximately one month. He eventually returned to New Orleans in October 2005, when he was admitted to Touro Infirmary. Ryan remained in a light coma through the remainder of 2005 and into early 2006.
An MRI performed in February 2006 revealed significant loss of brain tissue on the left side of Ryan’s brain. Doctors determined that he suffered a diffuse ax-onal brain injury. The brain damage occurred at the frontal orbital area, left temporal lobe, and the parietal lobe. The sustained brain damage left him with learning, memory, and behavioral problems, as well as ADHD, emotional instability, and personality problems. Ryan’s physical condition was characterized as hemiplegia, defined as paralysis or weakness of his left side. The physical aspects of his brain damage also include rigidity and spasticity in his arms and legs. He has severe motor dysfunction — he cannot walk or move around on his own and needs assistance with most functions of daily living. Ryan also has |4Bdysphasia, a swallowing dysfunction caused by nerve damage in the throat, making it unsafe for him *787 to swallow. He is fed through a peg tube inserted through the throat into the stomach. He is consistently in pain.
Doctors maintain that Ryan’s condition is permanent and will not improve. Ryan will never walk, talk, or have a career. He requires tremendous amounts of care. Despite the severity of Ryan’s injuries, he has a normal life expectancy contingent upon receiving the same level of care.
Considering the significant and permanent injuries sustained and the total award, we conclude that the jury’s general damage award, totaling $600,000.00, is abusively low. We find that no rational trier of fact could assess the effects of Ryan’s brain damage at $600,000.00, especially when Ryan’s parents were awarded nearly the same amount, each, in damages for loss of consortium. We find that the trial court erred in denying the Wiltzes’ judgment notwithstanding the verdict on this basis. Accordingly, we turn to similar cases to determine the lowest appropriate award that would be within the jury’s discretion. Duncan, 773 So.2d at 683.
In Duzon v. Stallworth, 01-1187 (La. App. 1 Cir. 12/11/02), 866 So.2d 837, the First Circuit increased an award of general damages from $625,000.00 to $3,000,000.00, where the plaintiff sustained serious injury after an 18-wheeler struck him and his friend while riding a bicycle. Mr. Duzon suffered brain damage and was left with the inability to walk or ingest food but by gastric tube. He additionally suffered muscle rigidity and spasticity, incontinence, and required daily therapy and a future surgery.
In Hopper v. Crown, 93-2021 (La.App. 1 Cir. 10/7/94), 646 So.2d 933, writ denied, 95-179 (La.3/17/95), 651 So.2d 275, the First Circuit affirmed the trial court’s award of $3,000,000.00 in general damages to the plaintiff for injuries |4fisustained in a forklift accident. Mr. Hopper was rendered a paraplegic, with severe medical and emotional problems, and could expect to have difficulty maintaining job success or satisfaction and difficulty medically and emotionally in the future.
In Pitre v. Louisiana Tech University, 26,388 (La.App. 2 Cir. 5/10/95), 655 So.2d 659, rev’d on merits, 95-1466 (La.5/10/96), 673 So.2d 585, a 20-year old university student paralyzed in a snowboarding accident on campus, who, in spite of his permanent paralysis and paraplegic condition and all of the complications related thereto, went on to obtain a bachelor’s degree and enroll in law school, was awarded $2,500,000.00 in general damages.
In DeRosier v. South Louisiana Contractors, 583 So.2d 531 (La.App. 3 Cir. 1991), writ denied, 587 So.2d 700 (La.1991), the Fourth Circuit affirmed general damages in the amount of $2,000,000.00 to an 18-year old driver injured in a motor vehicle accident in which she suffered a permanent brain injury, causing spastic hemiplegia, thereafter functioning at a borderline mentally retarded intelligence range, and suffering from periods of agitated depression. We note this award was affirmed over 20 years ago.
Considering the foregoing jurisprudence, we find that an overall award of $3,000,000.00 is the lowest award reasonably within the trial court’s discretion for Ryan Wiltz’s past and future pain and suffering, mental anguish, loss of enjoyment of life, and disfigurement and disability. We amend and render the judgment accordingly.
| ^Decree
Considering the foregoing, we amend the trial court’s judgment, increasing Ryan Wiltz’s award of general damages from $600,000.00 to $3,000,000.00. We reverse the judgment as to Winn-Dixie’s liability to Tina Tommaseo only. In all other re *788 spects, the trial court’s judgment is affirmed.

JUDGMENT AMENDED; AFFIRMED AS AMENDED IN PART; REVERSED IN PART.

HANS J. LILJEBERG, Judge.

. Tina Tommaseo is the non-custodial parent of half-siblings, Brian Lafontaine, Charie Bil-liot, and Chrissie Billiot.

. The Wiltzes and Gabbs additionally brought suit against Brian Lafontaine's father, Byron Lafontaine, for his vicarious liability of his son. The parties also brought suit against Brian Lafontaine's grandfather, Tommy Tom-maseo, and his insurer, as the owner of the vehicle driven by Brian Lafontaine on the day of the accident.

. Chris Acosta testified that Bogue Chitto Canoeing & Tubing Center, Inc. requires a person to be at least 18 years of age if unaccompanied by an adult.

. Chris Acosta did not like that Ryan Wiltz became close with Charie Billiot on the river. Consequently, Ryan sought a ride home with Charie in Lafontaine’s vehicle.

. A blood alcohol concentration of .08% is the legal presumption of intoxication for persons 21 years of age and older. A blood alcohol concentration of .02% is the legal presumption of intoxication for persons under 21 years of age. See La. R.S. §§ 14:98 and 14:98.1, respectively.

. La. C.C. art. 2315 states that "[ejvery act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.”

. See La. R.S. 14:93.10-93.14.

. La. R.S. 9:2800.1. Limitation of liability for loss connected with sale, serving, or furnishing of alcoholic beverages.
A. The legislature finds and declares that the consumption of intoxicating beverages, rather than the sale or serving or furnishing of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person.
B. Notwithstanding any other law to the contrary, no person holding a permit under either Chapter 1 or Chapter 2 of Title 26 of the Louisiana Revised Statutes of 1950, nor any agent, servant, or employee of such a person, who sells or serves intoxicating beverages of either high or low alcoholic content to a person over the age for the lawful purchase thereof, shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were sold or served.
C. (1) Notwithstanding any other law to the contrary, no social host who serves or furnishes any intoxicating beverage of either high or low alcoholic content to a person over the age for the lawful purchase thereof shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were served or furnished.
(2) No social host who owns, leases, or otherwise lawfully occupies premises on which, in his absence and without his consent, intoxicating beverages of either high or low alcoholic content are consumed by a person over the age for the lawful purchase thereof shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person who consumed the intoxicating beverages.
D. The insurer of the intoxicated person shall be primarily liable with respect to injuries suffered by third persons.
E. The limitation of liability provided by this Section shall not apply to any person who causes or contributes to the consumption of alcoholic beverages by force or by falsely representing that a beverage contains no alcohol.

. Meraux sold one case of Natural Light, a six-pack of Corona, and a bottle of Crown Royal to James Perez, at least four 12-packs of Bud Light to Ronald Lemoine, and one case of Bud Light to Justin Hartman. Other testimony suggested that Ronald Lemoine purchased four to five cases of beer at Mer-aux.

. Justin Hartman testified that Brian Lafon-taine gave him $20.00 to purchase alcohol for him on the morning of the tubing trip.

. La. R.S. 9:2798.4. Immunity from liability; injuries sustained by persons driving under the influence of alcoholic beverages or drugs provides in applicable part:
A. Neither the state, a state agency, or a political subdivision of the state nor any person shall be liable for damages, including those available under Civil Code Article 2315.1 or 2315.2, for injury, death, or loss of the operator of a motor vehicle, aircraft, watercraft, or vessel who:
(1) Was operating a motor vehicle, aircraft, watercraft, or vessel while his blood alcohol concentration of 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; or ...
B. The provisions of this Section shall not apply unless:
(1) The operator is found to be in excess of twenty-five percent negligent as a result of a blood alcohol concentration in excess of the limits provided in R.S. 14:98(A)(l)(b), or the operator is found to be in excess of twenty-five percent negligent as a result of being under the influence of a controlled dangerous substance described in R.S. 14:98(A)(l)(c); and
(2) This negligence was a contributing factor causing the damage.
*783 C. For purposes of this Section, "damages” include all general damages, including those otherwise recoverable in a survival or wrongful death action, which may be recoverable for personal injury, death or tes, or damage to property by the operator of a motor vehicle, aircraft, watercraft, or vessel or the category of persons who would have a cause of action for the operator’s wrongful death.

. We herein repudiate the dicta in Stead, supra at 1152, where this Court stated that the application of La. R.S. 9:2798.4 as written would be “contrary to public policy, patently absurd, and [could not be] the intent of the legislature.”